**Exhibit "A"**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
ALLSTATE INSURANCE          :   11-CV-2391(JG)
COMPANY, ET AL.,            :
                           :
       Plaintiffs,          :
                           :   United States Courthouse
     -against-              :   Brooklyn, New York
                           :
                           :
                           :
                           :   Thursday, February 16, 2012
KHAIMOV, ET AL.,            :   10:30 a.m.
                           :
       Defendants.          :
                           :
                           :
- - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE JOHN GLEESON
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs:      CADWALADER, WICKERSHAM & TAFT, LLP
                         Attorneys for the Plaintiffs -
                         Allstate Insurance Company, et al.
                             One World Financial Center
                             New York, New York 10281
                         BY: WILLIAM J. NATBONY, ESQ.


                         STERN & MONTANA, LLP
                         Attorneys for the Plaintiffs -
                         Allstate Insurance Company, et al.
                             Trinity Centre
                             115 Broadway
                             New York, New York 10006
                         BY: ROBERT A. STERN, ESQ.
                             SANDRA P. BURGOS, ESQ.

2

A P P E A R A N C E S: (Continued.)

```
For the              TSIRELMAN & VALERIO, P.C.
Defendants:          Attorneys for the Defendants -
                     Grand Medical Supply, Inc., Jamaica
                     Medical Supply, Inc., Laperla Supply,
                     Inc., New Capital Supply, Inc., Parsons
                     Medical Supply, Inc., Queens Medical
                     Supply, Inc., Royal Medical Supply, Inc.,
                     Utopia Equipment, Inc., Amner Khaimov,
                     Ilya Tamayeff, Murdakhay Khaimov, Zoya
                     Aminova, Abraham Layliev, Albert Khaimov
                         45-18 Court Square
                         #301
                         Long Island City, New York 11109
                     BY: MAX VALERIO, ESQ.
                         GARY TSIRELMAN, ESQ.


                     BLODNICK, CONROY, FAZIO & DIGLIO, P.C.
                     Attorneys for the Defendants -
                     GNK Medical Supply, Inc. Highlawn Best
                     Medical Supply, Inc., Major Market
                     Merchandise, Inc., Michael Zavrazhin,
                     Yakov Aminov
                         1325 Franklin Avenue
                         Suite 555
                         Garden City, New York 11530
                     BY: MARIA C. DIGLIO, ESQ.
                         EDWARD K. BLODNICK, ESQ.


Court Reporter:      Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                     Official Court Reporter
                     Telephone: (718) 613-2487
                     Facsimile: (718) 613-2694
                     E-mail: Anthony_Frisolone@nyed.uscourts.gov


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.
```

Oral Argument          3

1       (In open court.)

2       COURTROOM DEPUTY:  All rise.  The United States

3 District Court for the Eastern District of New York is now

4 in session.  The Honorable John Gleeson is now presiding.

5       (Honorable John Gleeson takes the bench.)

6       COURTROOM DEPUTY:  Calling civil cause for oral

7 argument in Docket No. 11-CV-2391, *Allstate Insurance*

8 *Company, et al. against Khaimov, et al.*.

9         Counsel, please note your appearances for the

10 record.

11       THE COURT:  Hello.

12       MR. VALERIO:  Good morning.

13       MS. BURGOS:  Good morning.

14       THE COURT:  State your appearances, please.

15       MS. BURGOS:  Your Honor for the plaintiffs, Sandra

16 Burgos along with Robert Stern and William Natbony.

17       MR. VALERIO:  For the moving defendants, Amner

18 Khaimov, Zoya Aminova, Murdakhay Khaimov, Albert Khaimov,

19 Ilya Tamayeff, for Laperla Supply, Parsons Medical Supply,

20 Jamaica Medical Supply Queens Medical Supply, Grand Medical

21 Supply, Utopia Equipment and New Capital Supply, Max

22 Valerio, Tsirelman & Valerio, P.C., and I will be joined

23 this morning by Mr. Tsirelman.

24       MR. TSIRELMAN:  Good morning, your Honor, same

25 defendants.

```
                       Oral Argument                      4
```

1          THE COURT:  Okay.  Good morning.

2          MS. DIGLIO:  Maria Diglio for defendants Yakov

3    Aminov, GNK Medical Supply and High Lawn Medical Supply and

4    I am joined by Edward Blodnick a partner in my firm.

5          THE COURT:  Good morning.  Is Royal Medical Supply

6    among the moving parties?

7          MR. NATBONY:  I think so.

8          THE COURT:  They're not listed, but I was

9    wondering why not.

10          MR. NATBONY:  They're not listed, your Honor.

11          THE COURT:  But that's your client?

12          MR. TSIRELMAN:  Yes, your Honor.

13          THE COURT:  You're moving on its behalf as well?

14          MR. TSIRELMAN:  Yes.

15          THE COURT:  Any objection to allowing them to join

16    this motion?

17          MR. STERN:  No, your Honor.

18          THE COURT:  Okay.  Who wants to be heard first.

19          MR. BLODNICK:  Your Honor, we thought we would be

20    heard on the arbitration issue first because a different

21    lawyer is arguing that, and then we would be heard on the

22    rest of it.

23          THE COURT:  Okay.

24          MR. BLODNICK:  Your Honor, my argument is going to

25    be very brief.  The Supreme Court ruled in *AccuCredit* that

1    an arbitration clause is enforceable unless the statute

2    specifically says there can be no arbitration.  The language

3    contained in every no-fault policy is either this language

4    or similar language.  In the event any person making a claim

5    for first-party benefits --

6              THE COURT:  Slow down a little bit because he's

7    still taking it down.

8              MR. BLODNICK:  Okay.

9              THE COURT:  Sorry to interrupt.

10             Go ahead.

11             MR. BLODNICK:  And the company do not agree

12   regarding any matter relating to the claim, and I emphasize

13   any matter relating to the claim, such person shall have the

14   option of submitting such disagreement to arbitration

15   pursuant to procedures promulgated or approved by the

16   Superintendent of Insurance.  In *CompuCredit*, the Court made

17   the following rulings.

18             Starting with the background law covering the

19   issue before us is the Federal Arbitration Act enacted in

20   1925 as a response to judicial hostility to arbitration.

21   This provision establishes a liberal federal policy favoring

22   arbitration agreements.  It requires courts to enforce

23   agreements to arbitrate according to their terms.  And then

24   it refers to the specific language in the case before them

25   which contains the following language.

Oral Argument                                    6

1              *"You have a right to sue a credit repair*

2              *organization that violates the Credit Repair*

3              *Organization Act.  Any waiver by any consumer of*

4              *any protection provided by, or any right of the*

5              *consumer under this subchapter shall be treated as*

6              *void and may not be enforced by any federal or*

7              *state court or any other person."*

8         The Court went on to say:

9              *"The only consumer right it creates is the*

10             *right to receive the statement which is meant to*

11             *describe the consumer protection that the law*

12             *elsewhere provides."*

13             Interpreting the right to sue language in

14   §1679 (c)(a), to create a right to sue in court not only

15   renders it strikingly out of place in the section that is

16   otherwise devoted to giving the consumer notice of the

17   rights created elsewhere, it also renders the creation of

18   the right to sue elsewhere superfluous.

19             The Court then goes on to say in *McMahon*, "We

20   enforced an arbitration agreement with respect to a cause of

21   action created by a provision of the Racketeer Influenced

22   Corrupt Organizations Act," which read in part.

23             *"Any person injured in his business or*

24             *property by reason of a violation of Section 1962*

25             *of this chapter may sue, therefore, in any*

1           *appropriate United States District Court to shall*

2           *recover three-fold damages he sustained to the*

3           *cost of the suit."*

4           Thus, we have repeatedly recognized the

5    contractually required arbitration claims satisfies the

6    statutory prescription of civil liability in court.

7           And then the Court goes on to describe the

8    language as necessary to provide that there can't be

9    arbitration.  It has done so with the clarity that far

10   exceeds the claimed indications in CLRA.

11          *"No predispute arbitration agreement shall be*

12          *valid or enforceable if the agreement requires*

13          *arbitration of a dispute arising under this*

14          *section."*

15          There is no such language in our case.

16          *"Only if after such controversy arises, all*

17          *parties to such controversy consent in writing to*

18          *the use of arbitration to settle such*

19          *controversy."*

20          There is no such language in this case.

21          If your Honor finds that the claims here

22   relate in anyway to the first-party benefits we as assignees

23   of the first-party benefits have a right to arbitration.

24          Thank you, your Honor.

25          THE COURT:  Thank you.

```
                          Oral Argument                      8
```

1          I want to hear all the defense arguments on

2     all of the -- with respect to all aspects of the motion and

3     then I'll hear from the plaintiff.

4          MR. BLODNICK:  Your Honor, may I sit down?

5          THE COURT:  Of course you may.

6          MR. BLODNICK:  Thank you.

7          THE COURT:  Thank you, sir.

8          MR. VALERIO:  Just to clarify on the arbitration

9     issue, your Honor.

10         Plaintiffs argue that Section 409 of the

11    Insurance Law directs them to initiate civil suits.  Now,

12    Section 409 sets forth a framework whereby insurance

13    companies must have a plan to submit to the Superintendent,

14    and this plan must detail how they intend to combat fraud,

15    insurance fraud.

16         As part of this claim, Section C describes

17    some of the activities that they can carry out.  One of

18    these activities is initiation of civil actions.  What we

19    are saying doesn't contradict or impair insurers' rights in

20    anyway.  They have the right to initiate civil actions.

21         Incidentally, they also have an obligation to

22    inform law enforcement agencies.  The reason is when there

23    are criminal violations it's not the insurance company's

24    duties to prosecute them it's obviously law enforcement

25    agencies, and they also have an obligation under the

1   Insurance Law to notify administrative agencies of any

2   pattern of overcharging or overbilling or fraudulent

3   billing, which they haven't pled in their complaint which

4   happened in this case.  But regardless, they have the right

5   to do it.  They can commence whatever civil proceeding they

6   want, but that provision, which was enacted long after the

7   mandatory endorsement was promulgated.  That provision

8   doesn't say:  And by the way if you, insurer, commence a

9   civil action you have thereby eliminated the claimant's

10  right to arbitration.

11          So the two are perfectly reconcilable.  If

12  they commence actions they can pick whatever venue they

13  want, but this doesn't eliminate claimant's rights to

14  arbitration and that right is what we're trying to enforce

15  here today.

16          I'm done with the arbitration portion.

17          THE COURT:  Okay.

18          MR. VALERIO:  If you -- whatever the Court wishes,

19  we can take the other arguments.

20          THE COURT:  Whatever other arguments you wish to

21  make in support of the motions.

22          MS. DIGLIO:  My arguments have to do with the RICO

23  motion.

24          THE COURT:  Understood.

25          MS. DIGLIO:  So on the part of our clients we've

1   moved to dismiss the civil RICO cause of action against

2   Yakov Aminov.  There is no RICO action against the two

3   companies, GNK and High Lawn.

4           Really, the crux of my motion is that

5   Allstate has failed to plead a distinct enterprise and let

6   me go through it a little bit.

7           Section 1961(4) defines an surprise to

8   include an individual, partnership, corporation,

9   association, or other legal entity, et cetera, et cetera,

10  group of individuals associated in fact although not a legal

11  entity.

12          The Supreme Court in *Turkette* elaborates a

13  little bit.  Explains that the enterprise must exist

14  separate and apart from the pattern of activity in which it

15  engages.  It also says it must be an ongoing -- an

16  organization distinct from the conduct of the culpable

17  defendants.

18          And finally, it says, "The enterprise is not

19  the pattern of racketeering activity; that it's an entity

20  separate and apart from the pattern of activity which it

21  engages."  That's *Turkette*, that's still good law.

22          So what's the enterprise here?

23          THE COURT:  You don't want me to overrule the

24  Supreme Court?

25          MS. DIGLIO:  I don't want them to say it's not

1   good law any more.  As far as our research, it's still good

2   law.

3              THE COURT:  Doesn't it only have relevance to

4   association-in-fact enterprises?

5              MS. DIGLIO:  I don't believe so.  It just talks

6   about the enterprise.  I mean, the language of *Turkette*

7   says, "The enterprise."

8              THE COURT:  But in that case it was an

9   association-in-fact that was a bunch of drug-dealing

10  obstructing-of-justice criminals; right?

11             MS. DIGLIO:  Yes.  But the language --

12             THE COURT:  The problem was whether they -- the

13  enterprise element and the pattern element will coalesce

14  because there was no structure.  It was just a bunch of bad

15  guys committing crimes, and the Supreme Court said, "No, no,

16  you have to prove structure separate and apart from the

17  pattern."  The proof may coalesce, but there are separate

18  elements.  But here we don't have an association-in-fact

19  enterprise.

20             MS. DIGLIO:  Completely understood, your Honor.

21             What we have here is the enterprise that is

22  alleged is GNK and High Lawn, but I mean GNK and High Lawn.

23             THE COURT:  It's okay, I'll understand.

24             MS. DIGLIO:  And that defendant Aminov, together

25  with unknown persons, exerted control over GNK to organize

1  the racketeering activities.  The racketeering activity is

2  the mail fraud.

3           THE COURT:  Right.

4           MS. DIGLIO:  So the problem is that in

5  Paragraphs 34 and 125 of the complaint the plaintiffs allege

6  that GNK and High Lawn were formed for the singular purpose

7  of fraudulently billing carriers.  For the singular purpose.

8                So case law in this circuit, in this

9  district, *Atkins V. Apollo*, holds that:

10               *"In a fraud-based RICO claim, if the sole*

11               *purpose of the alleged enterprise is to perpetrate*

12               *the alleged fraud there can be no enterprise for*

13               *RICO purposes."*

14               So I think, your Honor, what we have here is

15  a garden variety fraud claim couched in RICO language.  This

16  company exists solely to provide medical supplies to persons

17  injured in car accidents and to bill Allstate and the

18  insurance carriers for those enterprise.  You take away the

19  racketeering activity, which is the mail fraud, which is the

20  mailing of the bills, this entity doesn't exist.  It only

21  exists to do that billing.  Why else would it be in

22  business?  It can't be in business without the alleged

23  racketeering activity.

24               Now, plaintiffs try to correct this in the

25  opposition to the motion, state that plaintiffs and GNK

1   would exist if the racketeering activity were removed from

2   the equation.  But as I said, how can that be?  It can't be.

3   It can't be that they would exist if you remove the

4   racketeering activity.  So it's not distinct.  The

5   enterprise is not distinct from the racketeering activity,

6   that's our argument.

7          THE COURT:  Wasn't the same thing true in

8   *Turkette*?  They weren't, like, they didn't have legitimate

9   side jobs.  All they were doing was dealing drugs and

10  obstructing justice, burning things down and the like.  They

11  wouldn't have existed, but for their racketeering activity.

12         MS. DIGLIO:  Understood.  And there's other case

13  law that says that courts should be on the lookout for cases

14  that are -- fraud cases that are -- and I'll quote from

15  *Maersk* that are really nothing more than an ordinary fraud

16  case.

17         THE COURT:  I understand.  That argument got lost

18  about 25 years ago.  Lost in *Sedima*, got lost in H.J. People

19  have been griping about this civil RICO cause of action for

20  a long time and the courts have been saying, "Take it to the

21  Congress, we didn't write this thing."  I read your brief.

22  You're doing it again.  It's like this is a garden variety

23  fraud case but may be so --

24         MS. DIGLIO:  Except in the other complaints that

25  I've read it's never been alleged that the sole purpose for

Oral Argument                          14

1    the corporation, or for the P.C., the corporation in this

2    case, but P.C.s are medical professional corporations and

3    other claims.  The sole purpose for their existence was to

4    perpetrate this fraud which is specifically alleged by the

5    plaintiffs.

6              THE COURT:  You think your problems are too

7    undilutedly evil to be RICO defendants.  They have to have

8    some legitimate connection?

9              MS. DIGLIO:  My argument is they may be fraud

10   defendants but not RICO defendants.

11             THE COURT:  And that's because there are two

12   undilutedly criminal to qualify.

13             MS. DIGLIO:  Allegedly.  Well, if they're all --

14             THE COURT:  Let me finish, he's taking it down.

15             MS. DIGLIO:  Okay.

16             THE COURT:  Let me finish.

17             MS. DIGLIO:  Okay.  Sorry.

18             THE COURT:  Because they don't do some decent

19   law-abiding stuff on the side they don't get to be RICO

20   defendants.  That's a weird rule.

21             MS. DIGLIO:  It's not my contention that they have

22   to do some other law-abiding stuff on the side, but when the

23   plaintiffs say they've only been created to perpetrate this

24   fraud then that --

25             THE COURT:  I thought that was the precise

1   argument that the First Circuit bought in *Turkette* and the

2   Supreme Court blew out of the water.

3              Is it?

4        MS. DIGLIO:  I don't believe so.

5        THE COURT:  I'll have to reread the case because I

6   thought what the First Circuit said was that you can't have

7   a purely illegitimate enterprise because of the waif 1961(4)

8   was drafted at the association-in-fact because he used the

9   *Generis* principle, however that gets pronounced, applies to

10  that definition of enterprise and the Supreme Court said,

11  "No, that's wrong."

12             The Government won in *Turkette*.  People

13  arguing against the argument you're making here won, and

14  that's the Supreme Court of the United States.  So what

15  exactly would you have me done with that scenario?

16       MS. DIGLIO:  *Turkette* was a criminal case and the

17  language in *Turkette*, I believe the language in *Turkette*

18  applies in this case in our favor.

19       THE COURT:  All right.  Great.  Thank you.

20             What else?

21             Any other arguments you want to make in

22  connection with RICO claim or anything else for that matter?

23  I read your briefs.

24       MS. DIGLIO:  You have my brief.

25       THE COURT:  You're welcome to enhance or emphasize

1   anything.

2           MR. VALERIO:  Just to clarify on two elements in

3   the brief.

4           Reliance.  We show to the Court through the

5   briefs that in the No-fault System, insurers have the

6   unqualified right to question the veracity, the accuracy,

7   and any other aspect of any bill that they have received.

8           Look at the allegations here.  What they're

9   saying is:  We received a bunch of bills, we looked at them,

10  we decided to pay them, and then we woke up four years later

11  and realized that there was something wrong with them.  This

12  is contrary to both general principles governing fraud and

13  no-fault principles.

14          The courts have consistently ruled if you,

15  sophisticated party, have an opportunity, or are granted by

16  the applicable statutes, an opportunity to do your due

17  diligence and you don't you can't come back years later and

18  claim that you were defrauded.  The due diligence should

19  have been done.  This is general fraud.

20          In no-fault, specifically, the rule is

21  clear -- if an insurer requests verification of a claim, and

22  that is a technical term, which means issues a letter saying

23  I want to know A, B, C, D through Z or whatever other

24  information they want.  If the provider doesn't respond

25  satisfactorily, and, by the way, the insurer is the only

1   judge of whether or not the answer is satisfactory at the

2   claim stage the insurer doesn't even need to pay or deny.

3               Now, the brief by Allstate completely

4   neglects to discuss this portion.  They just say:  We have

5   only 30 days, we got to do something in haste.  It's not so.

6   They have all the time on earth.  Appellate case law

7   demonstrates that if a provider sues while a verification

8   request is still outstanding, the claim will be dismissed as

9   not ripe.  Why?  Because the insurer has the right to

10  receive the information that they request.

11              How does this play out in our argument?  Very

12  simply, whatever reliance they are alleging is not

13  justified.  We annexed to our motion a bill.  Now, they say

14  this bill doesn't inform Allstate of the type of equipment,

15  or the nature of the equipment, how much it costs, et

16  cetera, et cetera.  It's right there, they have it in their

17  face, and they can hold on to it for 30 days.  Now, if they

18  don't do it, if they don't challenge it within 30 days,

19  that's it.

20              The Court of Appeals has said conclusively:

21  You can question a fraudulent bill but you must do it within

22  the No-fault System, within the time lines, the deadlines,

23  within the procedures set forth in No-fault.  You don't do

24  it, game's over.

25              THE COURT:  Reasonableness in just about every

Oral Argument                                  18

1   context, though, and I hear your argument, but

2   reasonableness in just about every context whether it's

3   negligence with this due diligence obligation is kind of a

4   quintessentially a fact determination and I'm not persuaded

5   that this is something that I can resolve on a §12(b)(6)

6   motion.

7           MR. VALERIO:  I will be happy to address that

8   concern.

9           THE COURT:  How can I determine as a matter of law

10  with respect to all of these claims that there was no

11  reasonable reliance.  It me that's going to be so intensely

12  fact bound.

13          MR. VALERIO:  At least so much of the complaint as

14  alleges that there was inherently wrong on the bills; that

15  the bills are facially defective or misleading or false.  At

16  least so much of the complaint that alleges that much should

17  be dismissed as a matter of law.  There is no justifiable

18  reliance.

19              I respectfully disagree with the fact that

20  you cannot address it as a matter of law, but even if you

21  want to leave to as a factual determination for later

22  determination at least the portion of the complaint that

23  says, or that questions the facial validity of the bills,

24  must be resolved as a matter of law.  They cannot inject an

25  issue of fact into something that they had in their face.

1          THE COURT:  Okay.  I understand.

2          MS. DIGLIO:  If I might just add a little

3    corollary to that?

4               For example, there is items that were billed

5    in accordance to fee schedule and some that were billed in

6    accordance with their non-fee scheduled items, and the

7    complaint makes that pretty clear.  At least with respect to

8    the fee scheduled items, there are several allegations in

9    the complaint that these items were miscoded and that they

10   were coded incorrectly and that some of the bills had codes

11   on them that didn't exist in the workers' compensation fee

12   schedule.

13              I submit that that's what my colleague is

14   arguing -- that those are facial -- these are facially --

15   that there's no misrepresentation.  The bill is the bill, it

16   says on it exactly what it says.  So there is no

17   misrepresentation, this is it.  And as sophisticated insurer

18   will be able to say:  Well, oh, that's not the right code

19   for that, or that doesn't exist.  In that case, it's argued

20   in my brief as well that there is no reliance on that as

21   well.

22              MR. TSIRELMAN:  If I may, your Honor, if I can

23   just add.

24              I would like to also point out to the Court

25   that in this case perhaps different from any other cases in

1    that the insurer receives thousands of bills not only from

2    this supply company but from hundreds of supply companies.

3    So being on the receiving end of thousands of bills it can

4    certainly look at the bills that it receives from everyone

5    else and compare this client's bill to someone else's when

6    they receive a bill for the same item, and in that way that

7    reliance is simply unreasonable.

8               They cannot receive bills from thousands of

9    clients, thousands of supply companies, who, for example,

10   billed a hundred dollars for a supply then receive a bill

11   from this supply company that billed them a thousand dollars

12   for the same supply and say:  We're just going to pay it.

13   We're going to close our eyes.  We'll pay it and we'll sue

14   them later.

15               This leads, your Honor, so some very strange

16   results.  An insurance company that is diligent in reviewing

17   each and every bill at the time it receives them within the

18   30 days as the No-fault Law allows gets nothing from my

19   client.  An insurer that is negligent pays the claim, has

20   the right to now get that money back in triplicate.  The

21   negligent behavior in this case rewards the insurance

22   companies and that cannot be the case.

23               THE COURT:  Thank you.  Anything further from the

24   moving defendants.

25               MS. DIGLIO:  No, your Honor.

1          MR. VALERIO:  No, your Honor, but with the Court's

2    permission I would like to reserve five minutes for reply.

3          THE COURT:  We don't do time.  But it's your

4    motion so you'll get a reply.

5          MR. VALERIO:  Thank you.

6          MR. NATBONY:  Good morning, your Honor.

7          THE COURT:  Maybe I should do time.  Get one of

8    those lights.

9          MR. NATBONY:  Good morning, your Honor.

10              If I may, I'd like to address the arbitration

11   issue first.

12          THE COURT:  Yes.

13          MR. NATBONY:  As to that issue, actually, same

14   counsel were before your Honor back in October on this very

15   issue in the *Allstate versus Lyons* case.  And, in fact, the

16   oral argument for that case for another reason was actually

17   attached to our papers.  So to the extent that I won't

18   repeat that argument since it's already in these papers and

19   I trust your Honor will be able to read that.  But what I'd

20   like to do is focus on a couple of arguments that were made

21   in the reply papers that we didn't have an opportunity to

22   respond to and address, the *CompuCredit* decision which came

23   down after our initial papers.

24              Our initial papers, obviously, included the

25   argument that affirmative recovery actions are addressed by

1   *Mallela*; that they're outside the normal No-fault claims

2   process; that, there no more claims left, they've been paid;

3   there are no claimants, and that this issue has decided by

4   *Progressive* by Judge Gammerman.

5                 But as far as Insurance Law §409 I think it's

6   important to talk about that and the *CompuCredit* decision.

7   What I heard from my colleagues is that they admit that

8   Section 409 provides the right of insurers to file actions

9   to, in fact, enforce and initiate actions when there is

10  insurance fraud that has to be dealt with.  Significantly,

11  Section 409 gives the insurers the right not only to

12  prosecute such actions but to initiate such actions.  Those

13  are the words in the statute.  So, in fact, §409 puts the

14  decision about where and how to commence civil actions into

15  the insurers because of the use of the word initiate.

16                Now, relying on *CompuCredit*, what I'm hearing

17  is the argument is that because insurers would have the

18  right to initiate an arbitration that would be a civil

19  action and, therefore, they would have the right that is

20  recognized by Insurance Law 409.  Well, the problem is

21  that's just dead wrong because insurers do not have the

22  right to commence an arbitration, and this is the key

23  difference between here and *CompuCredit*.

24                In *CompuCredit*, you had a situation where

25  there was a law that said:  A consumer can sue a credit

1    repair agency.  Okay, well that's fine.  And then the issue

2    became, well, does suing mean an arbitration or a lawsuit?

3    The arbitration clause in that case said that both sides had

4    the ability to commence an arbitration.  It says, "Upon the

5    election by you or us, issues will be resolved by binding

6    arbitration."  So no dispute there that the consumer had a

7    right to commence an arbitration.  Here Section 409 of the

8    Insurance Law says that insurers have the right to initiate

9    civil actions to deal with fraud.

10                In the case of *Country-Wide versus Harnett*,

11   426 F. Supp.  1030 decided by Judges Lumbard, Griesa, and

12   Goettel make it absolutely clear that under the arbitration

13   provisions of No-fault insurers cannot initiate

14   arbitrations, and that's because of the language of the

15   arbitration provision.  It says, "An applicant for benefits

16   may initiate arbitration proceedings," that's not an

17   insurer.  They're the applicant for benefits.

18                And even if you look to the actual No-fault

19   contract which they have cited to that says that you have to

20   look at the arbitration provisions as set forth in the

21   regulations promulgated by the Superintendent, and those are

22   that only an application for first-party benefits has the

23   right to commence an arbitration.

24                So here's the problem.  Under their theory,

25   they're saying arbitration right replaces Insurance Law

Oral Argument                    24

1    §409.  The problem is insurers do not have the right to

2    commence an arbitration proceeding.  So what happens?  Well,

3    there has to be a way to reconcile Insurance Law §409 to

4    recognize those insurers' rights, which they've admitted we

5    have, you heard him saying, "We can do whatever we want

6    under §409," and the arbitration provision.  And the way to

7    do it is exactly what Judge Gammerman did in the *Progressive*

8    case -- to recognize there is a difference between an

9    arbitration proceeding that they can institute when there is

10   a claim or a No-fault claim pending to deal with these

11   issues and something different, which is an affirmative

12   recovery action once that claim process has finished which

13   insurers have under §409 under things like RICO, common law

14   fraud, unjust enrichment which is what is here.

15              So in that respect *CompuCredit* does not help

16   them.  It, in fact, reemphasizes why *Mallela* and other cases

17   and *Progressive* have all recognized this independent

18   affirmative right of recovery for insurers.

19              With respect to the other arguments, I would

20   defer, at least on the arbitration, to the arguments set

21   forth in our previous argument on the *Lyons* case.

22              Now, the other issue I would like to touch

23   briefly on even though my colleagues didn't mention it was

24   the argument with respect to joinder which they've made.

25              Under Rule 20(a)(2), the real question here

1    is:  Do the claims that we have asserted arise out of the

2    same transaction or occurrence or series of traffics or

3    occurrences, and are the claims logically connected?  Are

4    they logically connected in a way that would make sense for

5    them to be in the same proceeding?

6                   Unlike what the defendants have argued in

7    their motion, there is no illustrated disconnected nature of

8    these claims.  To the contrary, the complaint shows

9    remarkably consistent fraudulent conduct by the defendants

10   which can only be explained by concerted or joint conduct

11   rather than coincidence.  Nowhere do the defendants point

12   out any significant differences between the allegations

13   knowledge the various defendants and there's a good reason

14   because they can't.

15                   I mean, let's take a look at the cases that

16   they cite.  *Lyons*, for instance, *Lyons* was a case where we

17   were talking about copyright infringement.  And in *Lyons*,

18   what happened is people just used the same portal or website

19   to steal music.  That was the only thing that was the same.

20   Okay.  Well, people can make independent decisions to go use

21   that website to steal music.  There is no real logical

22   connection there -- I'm sorry, that was Arista Records.

23   *Lyons* was a case in costumes where they found a few

24   different costume shops that were knocking off characters.

25   Was there any allegation that the costumes were the same;

1    that the characters were the same, no.  Again, this could be

2    an instance of shops merely deciding that they could make

3    money by knocking off costumes.  Where was the logical

4    connection?  The court said there was none.

5              How about the *Nassau County* case?  In the

6    *Nassau County* case, there was something like -- the number

7    may be off -- but 164 different insurers, and the

8    allegations that they were terminating agents improperly.

9    Well, the problem was the reasons were all different and the

10   timings were all different.  So there was no logical plan,

11   no logical way to connect all of these.

12             Here, the similarities in actual conduct,

13   methods, fraudulent statements, patterns, and tools cannot

14   be explained by independent conduct.  There is no other

15   rational explanation other than joint communication, plan,

16   or action.  When you are submitting bills and you have to

17   come up with a phantom code number to put into the bill how

18   is it that that phantom code number was the same for all

19   these defendants?  How is it that the same improper billing

20   codes are being used by all the defendants?  How is it that

21   it's all the same equipment?

22             THE COURT:  I understand the argument.

23             MR. NATBONY:  So with that respect, and I would

24   also argue simply as a matter he judicial economy, it

25   doesn't really make sense when you've got all this logical

1   connection to have seven different lawsuits out there with

2   seven different or six or seven different lawsuits which is

3   in essence what they're saying because they're saying it

4   should be severed, dismissed and severed.  I mean, they

5   should be dealt with in one forum now and here.  Thank you,

6   your Honor.

7           THE COURT:  Thank you.

8           MS. BURGOS:  Your Honor, with the Court's

9   permission, I will address the issues raised with respect to

10  the RICO and fraud pleadings.

11              First, I think it should be noted that if we

12  were to set aside the facts that the defendants that are

13  represented by Ms. Diglio and Mr. Blodnick have moved to

14  dismiss claims that weren't even pled such as an

15  association-in-fact enterprise that the plaintiffs didn't

16  plead, or a conspiracy claim that the plaintiffs did not

17  plead, or an aiding and abetting claim as against her

18  clients, GNK and High Lawn, which the plaintiffs did not

19  plead as against them I think we get down to what arguments

20  they do make.  And I think the arguments that they do make

21  can be rejected out of hand because they're not supported by

22  the allegations in this case, or by relevant case law.

23              First, to the extent that they claim that the

24  RICO pleadings fail because the plaintiffs failed to allege

25  a distinction between the enterprise and the pattern of

Oral Argument                               28

1    racketeering activity, they're wrong.

2              Number one, the plaintiffs did not plead an

3    association-in-fact enterprise, they have pled a legal

4    corporate entity enterprise.

5              Number two, in 2009 the Supreme Court handed

6    down the *Boyle versus United States* decision that said that

7    there is no distinction that is required between the

8    enterprise and the pattern of racketeering activity.  But

9    even if that weren't the state of the laugh, which it is,

10   the plaintiffs have sufficiently alleged that the

11   enterprises exist separate and apart from the racketeering

12   acts.  Racketeering acts being the submission of hundreds,

13   if not thousands, of fraudulent claims that materially

14   misrepresent that they provided DME and/or orthotic devices

15   that weren't provided that were provided, if at all,

16   pursuant to a fraudulent medical protocol that were provided

17   with codes that do not exist, or with codes that were

18   substantially upcoded.

19             In addition to that, what I think is

20   important to note is that the plaintiffs have included

21   allegations that the enterprises paid kickbacks to no-fault

22   clinics in exchange for prescriptions.  Paid kickbacks to

23   wholesalers in exchange for inflated wholesale invoices.

24   They exerted efforts to obtain prescriptions from no-fault

25   clinics pursuant to a fraudulent medical protocol and not

Oral Argument                                    29

1    based on medical need, and exerted efforts to ensure that

2    the no-fault clinics that were providing them with the

3    prescriptions took the necessary steps to obtain the

4    claimants' signatures on documents that they knew would be

5    required in order to make their submissions to the insurers.

6              So at bottom, even if we were to separate the

7    enterprise from the racketeering acts, I respectfully submit

8    that the enterprises would still exist so that argument

9    fails.

10         THE COURT:  All of your alleged the enterprises

11   for RICO counts are P.C.s; correct?

12         MS. BURGOS:  They're corporation, yes, your Honor,

13   corporate entities.

14         THE COURT:  Professional corporations?

15         MS. BURGOS:  Not professional corporations in this

16   particular case, they're business entities.  They're Inc.s

17   to the extent.

18         THE COURT:  None of them is also a RICO defendant?

19         MS. BURGOS:  None of the corporate entities is

20   also a RICO defendant, no, your Honor.

21         THE COURT:  And it's true that your allegation is

22   that the sole purpose of these corporate entities is to

23   commit the fraud, commit the fraud you charge.

24         MS. BURGOS:  Yes, your Honor.

25              Your Honor, to the extent that they also

1    argue that the RICO allegations or the RICO claims fail

2    because the RICO enterprise isn't different from the person

3    I respectfully submit that that's wrong, too.

4              Number one, when the enterprises alleged are

5    corporations that distinction requirement is satisfied

6    simply by naming as RICO persons the corporate owners or

7    employees or other people that acted and participated in the

8    racketeering activities in furtherance of the scheme to

9    defraud and that's what we have here.  We've got GNK Medical

10   Supply as one enterprise, we've got High Lawn Medical Supply

11   as a separate enterprise, and we've got their individual

12   owners as the RICO persons.  So that distinction requirement

13   is satisfied as pled in the complaint.

14             To the extent another basis that they

15   challenge the RICO claims is based on the plaintiff's

16   failure to properly plead mail fraud that is unsupported by

17   the pleadings in this case.

18             Number one, with respect to GNK, the

19   plaintiffs have alleged that over the course of three years,

20   and with respect to High Lawn two years, that defendant

21   Aminov engaged in a pattern of racketeering activity which

22   was -- which purpose was to defraud the plaintiffs into

23   paying fraudulent bills; that he participated in the

24   racketeering activity by submitting those fraudulent bills;

25   that those acts were remit the since they were intended to

Oral Argument                                31

1   further the same criminal enterprise, and we've also

2   satisfied the continuity requirement because those acts

3   occurred over a substantial period of time and won't -- and

4   there's open-ended continuity because they won't be stopped

5   and pose a certain threat to continue into the future if not

6   halted by civil or criminal prosecution.

7              THE COURT:  Does open-ended continuity, does

8   demonstrating that require you to show that as we sit here

9   today that there's a threat to continuity into the future?

10             MS. BURGOS:  Well, at the time of the pleadings,

11  yes, your Honor.  And even if that were the requirement,

12  that is the case here because on the underlying issues, or

13  on the underlying bills, the defendants continue to seek

14  reimbursement under the No-fault Law.

15             THE COURT:  What if they didn't?  What if they

16  were up and running one of these corporations that was

17  formed you allege solely to commit no-fault fraud.  And

18  they're up and running for two months and then they're shut,

19  down and they're indisputably gone, it's dissolved.  There's

20  no closed-ended continuity for that period of time.  Are you

21  out of luck on your RICO claim because there's no threat

22  of -- there's no threat of continuity?

23             MR. STERN:  Your Honor, if I may?

24               With respect to open continuity, the Supreme

25  Court has held, and this Circuit has held, that two months

1   and a matter of weeks can actually be sufficient if there is

2   a continuing ongoing threat of criminal activity but for the

3   RICO action that would have continued or whether --

4        THE COURT:  I'm not saying about the RICO action.

5   Just suppose they went belly up some reason other than you

6   stepping in.  So there's no current threat of continuity

7   going forward at the time the complaint is filed can you

8   still satisfy the pattern requirement?

9        MR. STERN:  If it was open-ended continuity and

10  we're looking at a very short duration, and there was -- and

11  the reason for the termination of the enterprise was because

12  of reasons other than law enforcement or civil action and

13  I'm not sure that any court has addressed that specific

14  issue, your Honor.

15       THE COURT:  What if they had to?  What would you

16  tell them to do?

17       MR. STERN:  I would tell them, I mean, it is in

18  our fact pattern here.  We have a closed end, we satisfied

19  that in substantial duration.  If I were to advise the

20  Court, your Honor, if I may, I would say that if you had

21  sufficient racketeering activities going over the course of

22  a couple of months, and the lawsuit followed, that it would

23  be sufficient to bring a lawsuit.

24       THE COURT:  All right.  Sorry to interrupt you.

25  Go ahead.

1           MS. BURGOS:  Your Honor, with respect to the mail

2    fraud pleadings, the complaint is replete through the body

3    of the actual pleadings with examples of the fraudulent

4    misrepresentations made by the defendants.

5               In addition to that, we have no less than 42

6    exhibits in the appendix to the complaint in which each of

7    the exhibits specify what the misrepresentation was,

8    provides the claimant's initials, the claim numbers, the

9    specific billing codes that the defendants used that

10   plaintiffs take issue with, the name of the entity, and the

11   specific wrong.

12              In addition to the 42 exhibits, we've got an

13   appendix of predicate acts that includes, among other

14   things, the claimant's initials, the claim numbers, the

15   documents that the defendants submitted, the date of service

16   for the DME items that were included on the bills submitted,

17   the fraudulent misrepresentations included on those bills.

18              And so, with the specific examples in the

19   body of the complaint, the exhibits attached to the

20   complaint, the detail included in the predicate acts, it is

21   just not understandable that any argument can be made that

22   the plaintiffs have failed in their allegations to

23   sufficiently plead mail fraud.

24              To the extent that the defendants also argue

25   that the mail fraud aspect of plaintiff's complaint fails

1    because the plaintiffs fail to include copies of the actual

2    bills, well, the courts have clearly indicated in this

3    district and others that that's not required.  That to the

4    extent that in RICO there is a particular particularity

5    requirement that it is enough where a plaintiff delineates

6    with adequate particularity in the body of the complaint the

7    specific circumstances constituting the overall fraudulent

8    scheme.

9              Plaintiffs have included what the fraudulent

10   misrepresentations were in the body of the complaint.

11   They've particularized the fraudulent statements made in

12   detail in the exhibits and in the predicate acts table.  To

13   the extent that the defendants also claimed that the

14   complaint, or the predicate acts table, is deficient because

15   there is in distinction between bills I respectfully submit

16   that that's incorrect.  The bills are separated or the

17   claims are separated, and clearly identified by claimant's

18   initial and claim number.

19              So that the defendants are clearly aware and

20   on notice of what the allegations are as against them, and

21   so the particularity requirement as to the mail fraud is

22   sufficiently pled.  There is one argument that the

23   defendants represented by Mr. Blodnick and Ms. Diglio

24   include in their papers with respect to the RICO claims

25   being time barred, and I respectfully submit that based on

1    allegations in this complaint there is just no merit for

2    that.

3              Number one, the causes of action with respect

4    to GNK indicate that the participation in the affairs of the

5    enterprise began in 2008.  With respect to High Lawn began

6    in 2009.  The original complaint was filed in May of 2011.

7    The first amended complaint was filled in August --

8              THE COURT:  I get it.  So everything is within the

9    statute.

10             MS. BURGOS:  Correct, your Honor.

11             Now, I think it should be noted that with

12   respect to the RICO claims, it is only those defendants

13   represented by Ms. Diglio and Mr. Blodnick that have made

14   any challenge whatsoever to those RICO claims.

15             With respect to the defendants represented by

16   Mr. Tsirelman and Mr. Valerio, their only challenge to

17   plaintiff's claim as it relates to the pleading is with

18   respect to the fraud claim.  And there they made two, both

19   defendants, make two similar arguments both of which should

20   be rejected by the Court.

21             The first being that the complaint is not

22   sufficiently specific because the allegations are -- don't

23   set forth what the fraudulent misrepresentations are with

24   the particularity or the specificity required for a fraud

25   claim;

Oral Argument                                 36

1         And, number two, the second argument that

2    they spent much time about today and that is that it is just

3    not reasonable for a sophisticated insurer such as the

4    plaintiffs to rely on their own documents.

5              Well, for the same reasons that the

6    plaintiffs' complaint satisfactory the particularity

7    requirement, I respectfully submit that the fraud claim as

8    pled against all these defendants is sufficient.  It

9    provides them with information as to the basis of the

10   allegations, the basis of the claim.  It provides them with

11   specific details and exhibits, the predicate acts, and the

12   actual body of the complaint.

13             And with respect to the reliance aspect.

14   Your Honor correctly indicated, or recognized, that whether

15   it's reasonable or not for the insurers to rely on their

16   documents is an issue that is not appropriate on a motion to

17   dismiss.  It is an issue of fact so that it's not something

18   that's within the realm of the motion that's currently

19   pending before the Court.

20             THE COURT:  What's your response to their argument

21   about facially defective.

22             MS. BURGOS:  Well, with that, your Honor, I think

23   one thing is key.  The courts have unanimously indicated

24   that insurers have the right to rely on facially valid

25   claims, and the reason for that -- on facially valid claims.

Oral Argument                    37

1   And the reason for that is this -- in No-fault, there is a

2   strict 30-day requirement for the insurers to act.

3              THE COURT:  I'm not talking about facially valid

4   claims.

5              MS. BURGOS:  From an insurance perspective, they

6   are facially valid.  I mean, they're the ones that are

7   representing on the face of the document that this is the

8   code that pertains to this particular item.  This is the

9   price that pertains to this particular item, and when you're

10  dealing with an insurer that is processing hundreds, if not

11  hundreds, of thousands of claims they have to be able to

12  rely on what's on the face of that claim.  And so, what the

13  plaintiffs have pled is that they did rely on the face of

14  those claims.  We've satisfied at a minimum the elemental

15  pleading requirement that the plaintiffs justifiably relied

16  on the documents that they submitted in support of their

17  claims for reimbursement.

18             THE COURT:  What if the deficiency is patent on

19  the face of the claim nonetheless rely on it?  Shouldn't

20  that be unreasonable reliance.

21             MS. BURGOS:  Your Honor, that gets back to what

22  your Honor recognized earlier.  Whether it's reasonable or

23  unreasonable.

24             THE COURT:  What if it's phantom code?  What if

25  it's a code that doesn't exist?  And so, I just got to look

Oral Argument                           38

1    at it and you can see if there is a problem with it.  Would

2    reliance on that be unreasonable.

3              MS. BURGOS:  Your Honor, again, to the extent

4    we're talking about reasonableness it's not an issue for a

5    motion to dismiss.  Now, what it gets back to this is

6    this --

7              THE COURT:  It might be, as a matter of law, would

8    not be reasonable reliance.  It could be a motion to dismiss

9    issue, that's what I'm asking you.

10             MS. BURGOS:  And I don't think, your Honor, that

11   on its face with 30 days to process hundreds of thousands of

12   claims that an insurer can make that determination.  They

13   got to take their bills at their face, accept that they have

14   represented that this is what it says it is, and process

15   that claim.

16             THE COURT:  So they're excused from the due

17   diligence requirement because they didn't hire enough people

18   to review the claims in the 30 days.

19             MS. BURGOS:  It's not a matter of due diligence,

20   your Honor.  It's a matter of satisfying what their

21   obligations are under the law to promptly reimburse these

22   claims.  That's the overarching purpose of the No-fault Law

23   and that is to promptly reimburse these claims.  So that is

24   what they're doing -- they rely on the bills, they make

25   their determination they pay, and, consistent with what

1   Mr. Natbony indicated, the law is set forth such that if

2   after the fact they come across evidence or information that

3   supports that the original bills that they dutifully

4   processed were fraudulent in any way, shape, or form they

5   are entitled, they have the right to initiate action to get

6   that money back.

7            THE COURT:  This case consists solely of that type

8   of a claw-back type of recovery being sought.  Are there any

9   claims that were not paid that are the subject of this

10  lawsuit?

11           Do you understand the distinction.

12           MS. BURGOS:  Yes, your Honor.  These are all

13  claims that had been paid.

14           THE COURT:  Okay.

15           So there is no sense in which the defendants

16  here are in the posture that you say is contemplated by the

17  arbitration provision -- a person making a claim for

18  first-party benefits.  We don't have any of those in this

19  case?

20           MS. BURGOS:  No, your Honor.

21           MR. STERN:  Your Honor, if I may, just one thing:

22           While Ms. Burgos was addressing the Court, I

23  revisited your hypothetical if you may.

24           THE COURT:  You want to revise your answer?

25           MR. STERN:  I have revised my answer, and I think

Oral Argument                              40

1    under prevailing case law, not our facts here, but under

2    prevailing case law I think that it probably would not be

3    sufficient to stay the cause of action under the open-ended

4    continuity test.

5         THE COURT:  Okay.

6         MR. NATBONY:  Your Honor, may I just ask on the

7    *CompuCredit* issue would you prefer that I submit something

8    in writing, or will the record of the argument be

9    sufficient?

10        THE COURT:  If I want something I'll ask for it.

11        MR. NATBONY:  Thank you, your Honor.

12        THE COURT:  Anything else from the plaintiff's

13   side.

14        MS. BURGOS:  Your Honor, I will rely on our brief

15   to address the issues raised by defense counsel with respect

16   to the unjust enrichment claim except to say that the

17   argument that they've raised has been squarely, repeatedly,

18   and unequivocally rejected by courts time and again in this

19   district.  So I will rely on the arguments with respect to

20   the unjust enrichment claim.

21        THE COURT:  Thank you.

22        MS. BURGOS:  Thank you, your Honor.

23        MR. VALERIO:  I have to be brief otherwise I'm

24   going to get a parking ticket so starting with the last

25   point addressed by your Honor.

1          There are thousands of fee schedule disputes

2     litigated in court where an insurer reviews a bill or

3     receives a bill, reviews it, and says:  You billed too much,

4     let me reduce the payment.

5               Now, to claim that they didn't have time, or

6     they are so overworked that they can't do it is disingenuous

7     and let's just leave it at that.

8               In terms of *Mallela* now, this is important as

9     a distinction.  *Mallela* involved the situation in which the

10    professional corporations could never have billed for their

11    services.  They were not entitled, as a matter of law, to

12    get paid.  The Court of Appeals said:  Under the

13    circumstances, you insurers can go and get your money back

14    because they couldn't have gotten it to begin with.

15              The situation before the Court is completely

16    different, and it's governed by *Fair Price* where the Court

17    of Appeals said, well, there was an accident.  The policy

18    obligations were triggered.  What Travelers in that case was

19    arguing there was billing fraud, and the Court said you

20    didn't do it in a timely fashion.

21              Why am I saying this?  They keep on saying

22    that *Mallela* allows this type of action the one before you,

23    it doesn't.  It doesn't.  *Fair Price* instead precludes it.

24    §409, Section 409, they try to distinguish it by saying

25    insurers cannot start arbitrations.

1          So what is the import of that comment?  The

2     No-fault Law gave one party, and one party only, the right

3     to elect arbitration.  §409 did not overrule that provision.

4     There is an imbalance, if you will, in No-fault and this is

5     the price at that claimants had to pay in order to have

6     their claims paid expeditiously.

7          THE COURT:  Sorry to interrupt, and I take no

8     responsibility if you get a ticket, but the -- is the

9     arbitration issue in this case the same as it was in *Lyons*.

10         MR. VALERIO:  No.  It's before the Court, we have

11    the arbitration clause in the contract.

12         THE COURT:  Okay.

13         MR. VALERIO:  We're not relying on §5106, we're

14    showing you the contracts.

15         THE COURT:  Right.  I thought it was different.

16         MR. VALERIO:  And again, consider what they're

17    saying.  Because we already paid, this is no longer under

18    the purview of that provision, that's absurd.  Why?  Because

19    countenance in this proposition would allow insurers to just

20    pay everything, and instead of 30 days have six years to go

21    and challenge a claim that's absurd.  First.

22         Second, by its own language, this falls

23    within the clause.  The defendants here are entities that

24    received payment for first-party benefits.

25         Now, there is a dispute.  The insurer says:

1    You're not entitled to those because the bills are

2    fraudulent, and whatever other litany of complaints they

3    have.  That's the central dispute about those claims.

4    Without those claims, there would be no dispute.

5                     Finally --

6              THE COURT:  Who's got the right to arbitration?

7    The person making the claim for first-party benefits?

8              MR. BLODNICK:  Or their assignee.  Or their

9    assignee?

10             THE COURT:  Could you not interrupt.

11             MR. BLODNICK:  I'm sorry, your Honor.

12             MR. VALERIO:  And only that person.  And again,

13   this is the price.

14             THE COURT:  Do I have any such person before me?

15             MR. VALERIO:  Well, yes, your Honor.

16             THE COURT:  Because I don't understand you to be

17   making a claim for first-party benefits.  You made it, you

18   got paid.

19             MR. VALERIO:  Right.  We're still -- any issue

20   arising under that claim must be arbitrated.

21             MR. TSIRELMAN:  Your Honor, if I may add to that,

22   please.

23                  The assignments the in Insurance Law are not

24   simple assignments.  When we get an assignment --

25             THE COURT:  I don't mean to suggest that it's the

1    assignment that might be the problem.  I mean to suggest the

2    fact that the claim got paid.

3              MR. TSIRELMAN:  I am getting to that.

4              THE COURT:  Okay.

5              MR. TSIRELMAN:  I'll make it short.  When the

6    claim --

7              THE COURT:  You don't have to.

8              MR. TSIRELMAN:  Okay.

9              THE COURT:  It's not my car out there.

10             MR. TSIRELMAN:  When we receive an assignment or

11   where a medical provider or a supply company receives an

12   assignment and submits its bill, when that bill is paid the

13   assignment is not extinguished.

14                  For example, if the supply -- if the same

15   supply company receives another prescription for a supply,

16   and has to send another bill to the insurance company, it

17   does not need another assignment.  Once it receives the

18   first assignment, they become the assignees to eternity.  So

19   with each and every bill, they do not need to get a new

20   assignment.  The first assignment is enough to submit each

21   and every bill for the next 20 years.  And as long as

22   there's a controversy, as long as there is a dispute between

23   the parties, the assignment is valid; they're still the

24   assignees.

25             THE COURT:  All right.

Oral Argument                    45

1          MR. BLODNICK:  Can I be heard, your Honor?

2          THE COURT:  Not yet.

3               Are you finished.

4          MR. TSIRELMAN:  Yes, your Honor.

5          THE COURT:  And you, sir.

6          MR. VALERIO:  The FAA, your Honor, by its own

7     terms applies to dispute.  The clause is clear, it's broad.

8     It applies to any dispute regarding any matter relating to

9     the claim.  Not only when we asserted in a first-party

10    action, but also like here when the validity of those claims

11    is questioned.

12               Thank you, your Honor.

13         THE COURT:  Thank you.  Yes, sir.

14         MR. BLODNICK:  Your Honor, it really boils down to

15    these five lines here:

16              *"In the event any party making a claim for*

17              *first-party benefits and the company do not agree*

18              *regarding any matter relating to the claim."*

19               Now, your Honor is questioning whether any

20    matter related to the claim is including a matter to try to

21    get the money back for a claim paid I believe it is.  That's

22    the first part, that's the first issue your Honor has to

23    determine.  Is it a claim to get the money back relating to

24    the claim, I believe that it is.

25               The second argument made is that the

1  insurance company -- that the Superintendent of Insurance

2  determines whether it is an arbitration or not.  That's not

3  what the language says which my learned adversary argued.

4  It's really a ministerial act.  We, as the assignee, have

5  the right to the arbitration.

6          So what would happen is with§409 they have a

7  trite start the action and then we have a right to a stay

8  and to commence an arbitration to resolve the dispute.  We

9  have the right to select the forum in which the claim is

10  determined, they don't, I agree with them.  Under §409 they

11  don't have the option but we do have the option.

12          Thank you.

13          THE COURT:  Thank you.  I'm going to reserve.

14          MR. VALERIO:  May I make one clarification?

15          THE COURT:  No.

16          MR. VALERIO:  Thank you, your Honor.

17          THE COURT:  On motion to compel arbitration, I

18  will reserve on that I'll decide that in writing.  The rest

19  of these motions are denied.  I'm not going to belabor the

20  record with it.  I have related cases in which the same

21  counsel have appeared.

22          I will file an opinion very soon, today or

23  tomorrow, in the *Lyons* case where there'll be a more

24  adequate description of my reasoning with respect to the

25  other aspects of the motions before me but very briefly.

1              On the RICO claims, the general complaint

2    about the use of the RICO statute in this context that

3    suggested earlier has been -- doesn't seek any particular

4    relief.  But, in any event, it's really a matter for

5    Congress to address, not me.

6              The challenges based on the claimed failure

7    to allege an adequate enterprise because it doesn't plead an

8    ascertainable structure distinct from that inherent in the

9    alleged pattern completely misses the mark.  The enterprise

10   that's alleged here is not an association-in-fact

11   enterprise, but a corporate entity, a legal entity, within

12   the meaning of §1961(4) even though it's alleged to do

13   nothing but illegal business.  It's also not one of the RICO

14   defendants which further defeats the claim distinctness

15   problem an enterprise's sole purpose can be fraud contrary

16   to the defendant's argument, see *U.S. versus Turkette*.

17             The pattern challenged to the alleged pattern

18   has no merit.  These schemes as alleged, and this is a

19   motion to dismiss, and I have to take the well-pleaded

20   allegations to be true.  They are the epitome of

21   closed-ended continuity, excuse me, of open-ended

22   continuity.  The sole purpose of these entities is to commit

23   fraud.  The threat of continuity in here is in the

24   racketeering activity alleged.

25             The challenges to the specificity of the

1   fraud alleged, and the sufficiency of the pleadings in this

2   regard, which afflict both the -- not afflict -- they are a

3   part of the challenges both to the RICO count and to the

4   state law fraud counts have no merit.  It's a 162-page

5   complaint with a bunch of appendices and exhibits that lay

6   out the claim number and the date submitted, billing codes

7   used, and the like.

8                   There is ample, maybe too much specificity of

9   the allegations in this complaint so those challenges have

10  no merit.

11                  The statute of limitations argument is

12  frivolous.  All the alleged acts being within the

13  limitations period.

14                  The argument that with respect to the fraud

15  claim that Allstate is a sophisticated insurer so it can't

16  properly plead reasonable reliance as I suggested during the

17  argument itself I think is not something that can properly

18  be decided at this stage of the game.  It's such a -- the

19  reasonableness of the insurers' reliance is intensely fact

20  bound; it can't be decided as a matter of law.

21                  The challenge to the unjust enrichment claim

22  fails.  Plaintiffs can plead unjust enrichment as an

23  alternative to the contract remedies.

24                  The joinder and severance arguments are

25  denied.  The defendants and the causes of action were

1   properly joined under §20(a)(2) of the Federal Rules of

2   Civil Procedure which allow joinder, "In one action where

3   any right to relief is asserted against the defendants

4   jointly, severally, or in the alternative with respect to or

5   arising out of the same transaction occurrence or series of

6   transactions or occurrences, and any question of law or fact

7   is common to all defendants and will arise in the action."

8           Under *United Mine Workers against Gibbs*, 383,

9   U.S. 715 at 724, it's a 1966 case from the Supreme Court I'm

10  instructed that the impulses toward, "Entertaining the

11  broadest possible scope of action consistent with fairness

12  to the parties.  Joinder of claims, parties, and remedies

13  are strongly encouraged."

14          Here, all the moving defendants submit an

15  identical delivery receipts and/or assignment of benefit

16  forms to the plaintiff and contain the same irregularities,

17  obviously, based on a shared template and we use the same

18  phantom billing codes for the same items strongly suggests

19  coordination among the defendants.  And because the complex

20  schemes that are alleged are generally identical they're

21  clearly logically related.

22          Severance may be an issue that is going to be

23  properly addressed once again down the road assuming the

24  case survives what remains of the motions.  I can see the

25  possible prejudice.  I can see possible prejudice to

1    configurations of plaintiffs if they're all to be tried

2    together, but at the moment I see nothing but efficiency in

3    keeping them together in the case.  So any application at

4    this point to sever -- or the application to sever is

5    denied.

6                    I will reserve on the motion to compel.  The

7    aspect of the motion to compel that this case shares with

8    the *Lyons* case will be addressed in that Memorandum and

9    Order, and to the extent there is a separate argument here I

10   will deal with it separately.

11              MR. VALERIO:  Thank you.

12              MR. STERN:  Thank you.

13              MS. DIGLIO:  Thank you.

14              MS. BURGOS:  Thank you.

15              MR. NATBONY:  Thank you.

16              MR. BLODNICK:  Thank you.

17              THE COURT:  Thank you.

18              (WHEREUPON, this matter was adjourned.)

19

20                          *   *   *

21

22

23

24

25

1

2                        <u>CERTIFICATE OF REPORTER</u>

3
I certify that the foregoing is a correct transcript of the
4    record of proceedings in the above-entitled matter.

5

6

7

8
     _____
     Anthony D. Frisolone, FAPR, RDR, CRR, CRI
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# #

**#301** [1] - 2:7

# 1

**10006** [1] - 1:21
**10281** [1] - 1:16
**1030** [1] - 23:11
**10:30** [1] - 1:8
**11-CV-2391** [1] - 3:7
**11-CV-2391(JG** [1] - 1:3
**11109** [1] - 2:8
**115** [1] - 1:20
**11530** [1] - 2:14
**125** [1] - 12:5
**1325** [1] - 2:13
**16** [1] - 1:7
**162-page** [1] - 48:4
**164** [1] - 26:7
**1925** [1] - 5:20
**1961(4** [2] - 10:7, 15:7
**1962** [1] - 6:24
**1966** [1] - 49:9

# 2

**20** [1] - 44:21
**20(a)(2** [1] - 24:25
**2008** [1] - 35:5
**2009** [2] - 28:5, 35:6
**2011** [1] - 35:6
**2012** [1] - 1:7
**25** [1] - 13:18

# 3

**30** [7] - 17:5, 17:17, 17:18, 20:18, 38:11, 38:18, 42:20
**30-day** [1] - 37:2
**34** [1] - 12:5
**383** [1] - 49:8

# 4

**409** [7] - 8:10, 8:12, 22:8, 22:11, 22:20, 23:7, 41:24
**42** [2] - 33:5, 33:12
**426** [1] - 23:11
**45-18** [1] - 2:7

# 5

**555** [1] - 2:14

# 6

**613-2487** [1] - 2:18
**613-2694** [1] - 2:18

# 7

**715** [1] - 49:9
**718** [2] - 2:18, 2:18
**724** [1] - 49:9

# A

**a.m** [1] - 1:8
**abetting** [1] - 27:17
**abiding** [2] - 14:19, 14:22
**ability** [1] - 23:4
**able** [3] - 19:18, 21:19, 37:11
**above-entitled** [1] - 51:4
**Abraham** [1] - 2:6
**absolutely** [1] - 23:12
**absurd** [2] - 42:18, 42:21
**accept** [1] - 38:13
**accident** [1] - 41:17
**accidents** [1] - 12:17
**accordance** [2] - 19:5, 19:6
**according** [1] - 5:23
**AccuCredit** [1] - 4:25
**accuracy** [1] - 16:6
**act** [2] - 37:2, 46:4
**Act** [3] - 5:19, 6:3, 6:22
**acted** [1] - 30:7
**action** [21] - 6:21, 9:9, 10:1, 10:2, 13:19, 22:19, 24:12, 26:16, 32:3, 32:4, 32:12, 35:3, 39:5, 40:3, 41:22, 45:10, 46:7, 48:25, 49:2, 49:7, 49:11
**actions** [10] - 8:18, 8:20, 9:12, 21:25, 22:8, 22:9, 22:12, 22:14, 23:9
**activities** [5] - 8:17, 8:18, 12:1, 30:8, 32:21
**activity** [16] - 10:14, 10:19, 10:20, 12:1, 12:19, 12:23, 13:1, 13:4, 13:5, 13:11, 28:1, 28:8, 30:21, 30:24, 32:2, 47:24
**acts** [11] - 28:12, 29:7, 30:25, 31:2, 33:13, 33:20, 34:12, 34:14, 36:11, 48:12
**actual** [5] - 23:18, 26:12, 33:3, 34:1, 36:12
**add** [3] - 19:2, 19:23, 43:21
**addition** [3] - 28:19, 33:5, 33:12
**address** [5] - 18:7, 18:20, 21:10, 21:22, 27:9, 40:15, 47:5
**addressed** [5] - 21:25, 32:13, 40:25, 49:23, 50:8
**addressing** [1] - 39:22
**adequate** [3] - 34:6, 46:24, 47:7
**adjourned** [1] - 50:18
**administrative** [1] - 9:1
**admit** [1] - 22:7
**admitted** [1] - 24:4
**adversary** [1] - 46:3
**advise** [1] - 32:19
**affairs** [1] - 35:4
**afflict** [2] - 48:2
**agencies** [3] - 8:22, 8:25, 9:1
**agency** [1] - 23:1
**agents** [1] - 26:8

**ago** [1] - 13:18
**agree** [3] - 5:11, 45:17, 46:10
**agreement** [3] - 6:20, 7:11, 7:12
**agreements** [2] - 5:22, 5:23
**ahead** [2] - 5:10, 32:25
**aided** [1] - 2:20
**aiding** [1] - 27:17
**AL** [2] - 1:3, 1:8
**al** [3] - 1:15, 1:19, 3:8
**al.** [1] - 3:8
**Albert** [2] - 2:6, 3:18
**allegation** [2] - 25:25, 29:21
**allegations** [14] - 16:8, 19:8, 25:12, 26:8, 27:22, 28:21, 30:1, 33:22, 34:20, 35:1, 35:22, 36:10, 47:20, 48:9
**allege** [4] - 12:5, 27:24, 31:17, 47:7
**alleged** [19] - 11:22, 12:11, 12:12, 12:22, 13:25, 14:4, 28:10, 29:10, 30:4, 30:19, 47:9, 47:10, 47:12, 47:17, 47:18, 47:24, 48:1, 48:12, 49:20
**Allegedly** [1] - 14:13
**alleges** [2] - 18:14, 18:16
**alleging** [1] - 17:12
**allow** [2] - 42:19, 49:2
**allowing** [1] - 4:15
**allows** [2] - 20:18, 41:22
**ALLSTATE** [1] - 1:3
**Allstate** [9] - 1:15, 1:19, 3:7, 10:5, 12:17, 17:3, 17:14, 21:15, 48:15
**alternative** [2] - 48:23, 49:4
**amended** [1] - 35:7
**Aminov** [5] - 2:13, 4:3, 10:2, 11:24, 30:21
**Aminova** [2] - 2:6, 3:18
**Amner** [2] - 2:5, 3:17
**ample** [1] - 48:8
**annexed** [1] - 17:13
**answer** [3] - 17:1, 39:24, 39:25
**Anthony** [2] - 2:17, 51:8
**anyway** [2] - 7:22, 8:20
**apart** [4] - 10:14, 10:20, 11:16, 28:11
**Apollo** [1] - 12:9
**Appeals** [3] - 17:20, 41:12, 41:17
**appearances** [2] - 3:9, 3:14
**appeared** [1] - 46:21
**appellate** [1] - 17:6
**appendices** [1] - 48:5
**appendix** [2] - 33:6, 33:13
**applicable** [1] - 16:16
**applicant** [2] - 23:15, 23:17
**application** [3] - 23:22, 50:3, 50:4
**applies** [4] - 15:9, 15:18, 45:7, 45:8
**appropriate** [2] - 7:1, 36:16
**approved** [1] - 5:15
**arbitrate** [1] - 5:23
**arbitrated** [1] - 43:20
**arbitration** [44] - 4:20, 5:1, 5:2, 5:14, 5:20, 5:22, 6:20, 7:5, 7:9, 7:11, 7:13, 7:18, 7:23, 8:8, 9:10, 9:14, 9:16, 21:10, 22:18, 22:22, 23:2, 23:3, 23:4, 23:6, 23:7, 23:12, 23:15, 23:16, 23:20, 23:23, 23:25, 24:2, 24:6, 24:9, 24:20, 39:17, 42:3, 42:9, 42:11, 43:6, 46:2, 46:5, 46:8, 46:17
**Arbitration** [1] - 5:19

**arbitrations** [2] - 23:14, 41:25
**argue** [4] - 8:10, 26:24, 30:1, 33:24
**argued** [3] - 19:19, 25:6, 46:3
**arguing** [4] - 4:21, 15:13, 19:14, 41:19
**ARGUMENT** [1] - 1:11
**argument** [29] - 3:7, 4:24, 13:6, 13:17, 14:9, 15:1, 15:13, 17:11, 18:1, 21:16, 21:18, 21:25, 22:17, 24:21, 24:24, 26:22, 29:8, 33:21, 34:22, 36:1, 36:20, 40:8, 40:17, 45:25, 47:16, 48:11, 48:14, 48:17, 50:9
**arguments** [13] - 8:1, 9:19, 9:20, 9:22, 15:21, 21:20, 24:19, 24:20, 27:19, 27:20, 35:19, 40:19, 48:24
**arise** [2] - 25:1, 49:7
**arises** [1] - 7:16
**arising** [3] - 7:13, 43:20, 49:5
**Arista** [1] - 25:22
**ascertainable** [1] - 47:8
**aside** [1] - 27:12
**aspect** [4] - 16:7, 33:25, 36:13, 50:7
**aspects** [2] - 8:2, 46:25
**asserted** [3] - 25:1, 45:9, 49:3
**assignee** [3] - 43:8, 43:9, 46:4
**assignees** [3] - 7:22, 44:18, 44:24
**assignment** [11] - 43:24, 44:1, 44:10, 44:12, 44:13, 44:17, 44:18, 44:20, 44:23, 49:15
**assignments** [2] - 43:23, 43:24
**associated** [1] - 10:10
**association** [8] - 10:9, 11:4, 11:9, 11:18, 15:8, 27:15, 28:3, 47:10
**association-in-fact** [7] - 11:4, 11:9, 11:18, 15:8, 27:15, 28:3, 47:10
**assuming** [1] - 49:23
**Atkins** [1] - 12:9
**attached** [2] - 21:17, 33:19
**attorneys** [1] - 2:11
**Attorneys** [3] - 1:15, 1:19, 2:2
**August** [1] - 35:7
**Avenue** [1] - 2:13
**aware** [1] - 34:19

## B

**background** [1] - 5:18
**bad** [1] - 11:14
**barred** [1] - 34:25
**based** [6] - 12:10, 29:1, 30:15, 34:25, 47:6, 49:17
**basis** [3] - 30:14, 36:9, 36:10
**became** [1] - 23:2
**become** [1] - 44:18
**BEFORE** [1] - 1:12
**began** [2] - 35:5
**begin** [1] - 41:14
**behalf** [1] - 4:13
**behavior** [1] - 20:21
**belabor** [1] - 46:19
**belly** [1] - 32:5
**bench** [1] - 3:5
**benefit** [1] - 49:15
**benefits** [11] - 5:5, 7:22, 7:23, 23:15, 23:17, 23:22, 39:18, 42:24, 43:7, 43:17,

45:17
**Best** [1] - 2:11
**between** [7] - 22:23, 24:8, 25:12, 27:25, 28:7, 34:15, 44:22
**bill** [19] - 12:17, 16:7, 17:13, 17:14, 17:21, 19:15, 20:5, 20:6, 20:10, 20:17, 26:17, 41:2, 41:3, 44:12, 44:16, 44:19, 44:21
**billed** [6] - 19:4, 19:5, 20:10, 20:11, 41:3, 41:10
**billing** [8] - 9:3, 12:7, 12:21, 26:19, 33:9, 41:19, 48:6, 49:18
**bills** [23] - 12:20, 16:9, 18:14, 18:15, 18:23, 19:10, 20:1, 20:3, 20:4, 20:8, 26:16, 30:23, 30:24, 31:13, 33:16, 33:17, 34:2, 34:15, 34:16, 38:13, 38:24, 39:3, 43:1
**binding** [1] - 23:5
**bit** [3] - 5:6, 10:6, 10:13
**blew** [1] - 15:2
**BLODNICK** [13] - 2:10, 2:15, 4:19, 4:24, 5:8, 5:11, 8:4, 8:6, 43:8, 43:11, 45:1, 45:14, 50:16
**Blodnick** [4] - 4:4, 27:13, 34:23, 35:13
**body** [5] - 33:2, 33:19, 34:6, 34:10, 36:12
**boils** [1] - 45:14
**bottom** [1] - 29:6
**bought** [1] - 15:1
**bound** [2] - 18:12, 48:20
**Boyle** [1] - 28:6
**brief** [8] - 4:25, 13:21, 15:24, 16:3, 17:3, 19:20, 40:14, 40:23
**briefly** [2] - 24:23, 46:25
**briefs** [2] - 15:23, 16:5
**bring** [1] - 32:23
**broad** [1] - 45:7
**broadest** [1] - 49:11
**Broadway** [1] - 1:20
**Brooklyn** [1] - 1:5
**bunch** [4] - 11:9, 11:14, 16:9, 48:5
**Burgos** [2] - 3:16, 39:22
**BURGOS** [22] - 1:22, 3:13, 3:15, 27:8, 29:12, 29:15, 29:19, 29:24, 31:10, 33:1, 35:10, 36:22, 37:5, 37:21, 38:3, 38:10, 38:19, 39:12, 39:20, 40:14, 40:22, 50:14
**burning** [1] - 13:10
**business** [5] - 6:23, 12:22, 29:16, 47:13
**BY** [4] - 1:17, 1:21, 2:8, 2:15

## C

**c)(a** [1] - 6:14
**CADWALADER** [1] - 1:14
**cannot** [7] - 18:20, 18:24, 20:8, 20:22, 23:13, 26:13, 41:25
**Capital** [2] - 2:4, 3:21
**car** [2] - 12:17, 44:9
**carriers** [2] - 12:7, 12:18
**carry** [1] - 8:17
**case** [45] - 5:24, 7:15, 7:20, 9:4, 11:8, 12:8, 13:12, 13:16, 13:23, 14:2, 15:5, 15:16, 15:18, 17:6, 19:19, 19:25, 20:21,

20:22, 21:15, 21:16, 23:3, 23:10, 24:8, 24:21, 25:16, 25:23, 26:5, 26:6, 27:22, 29:16, 30:17, 31:12, 39:7, 39:19, 40:1, 40:2, 41:18, 42:9, 46:23, 49:9, 49:24, 50:3, 50:7, 50:8
**cases** [6] - 13:13, 13:14, 19:25, 24:16, 25:15, 46:20
**CAUSE** [1] - 1:11
**causes** [2] - 35:3, 48:25
**Center** [1] - 1:16
**central** [1] - 43:3
**Centre** [1] - 1:20
**certain** [1] - 31:5
**certainly** [1] - 10:9, 17:16
**CERTIFICATE** [1] - 51:2
**certify** [1] - 51:3
**cetera** [1] - 10:9, 17:16
**challenge** [6] - 17:18, 30:15, 35:14, 35:16, 42:21, 48:21
**challenged** [1] - 47:17
**challenges** [4] - 47:6, 47:25, 48:3, 48:9
**chapter** [1] - 6:25
**characters** [2] - 25:24, 26:1
**charge** [1] - 29:23
**circuit** [1] - 12:8
**Circuit** [3] - 15:1, 15:6, 31:25
**circumstances** [2] - 34:7, 41:13
**cite** [1] - 25:16
**cited** [1] - 23:19
**City** [2] - 2:8, 2:14
**civil** [14] - 3:6, 7:6, 8:11, 8:18, 8:20, 9:5, 9:9, 10:1, 13:19, 22:14, 22:18, 23:9, 31:6, 32:12
**Civil** [1] - 49:2
**CIVIL** [1] - 1:11
**claim** [52] - 5:4, 5:12, 5:13, 8:16, 12:10, 12:15, 15:22, 16:18, 16:21, 17:2, 17:8, 20:19, 24:10, 24:12, 27:16, 27:17, 27:23, 31:21, 33:8, 33:14, 34:18, 35:17, 35:18, 35:25, 36:7, 36:10, 37:12, 37:19, 37:25, 37:4, 37:11, 37:14, 37:17, 38:12, 38:18, 38:22, 38:23, 39:9, 39:13, 42:6, 43:3, 43:4, 45:10, 47:1, 49:12
**claimant's** [5] - 9:9, 9:13, 33:8, 33:14, 34:17
**claimants** [2] - 22:3, 42:5
**claimants'** [1] - 29:4
**claimed** [3] - 7:10, 34:13, 47:6
**claims** [35] - 7:5, 7:21, 14:3, 18:10, 22:1, 22:2, 25:1, 25:3, 25:8, 27:14, 28:13, 30:1, 30:15, 34:17, 34:24, 35:12, 35:14, 36:25, 37:4, 37:11, 37:14, 37:17, 38:12, 38:18, 38:22, 38:23, 39:9, 39:13, 42:6, 43:3, 43:4, 45:10, 47:1, 49:12
**clarification** [1] - 46:14
**clarify** [2] - 8:8, 16:2
**clarity** [1] - 7:9
**clause** [5] - 5:1, 23:3, 42:11, 42:23, 45:7
**claw** [1] - 39:8
**claw-back** [1] - 39:8
**clear** [4] - 16:21, 19:7, 23:12, 45:7
**clearly** [4] - 34:2, 34:17, 34:19, 49:21

**client** [2] - 4:11, 20:19
**client's** [1] - 20:5
**clients** [3] - 9:25, 20:9, 27:18
**clinics** [3] - 28:22, 28:25, 29:2
**close** [1] - 20:13
**closed** [3] - 31:20, 32:18, 47:21
**closed-ended** [2] - 31:20, 47:21
**CLRA** [1] - 7:10
**coalesce** [2] - 11:13, 11:17
**code** [6] - 19:18, 26:17, 26:18, 37:8, 37:24, 37:25
**coded** [1] - 19:10
**codes** [7] - 19:10, 26:20, 28:17, 33:9, 48:6, 49:18
**coincidence** [1] - 25:11
**colleague** [1] - 19:13
**colleagues** [2] - 22:7, 24:23
**combat** [1] - 8:14
**commence** [10] - 9:5, 9:8, 9:12, 22:14, 22:22, 23:4, 23:7, 23:23, 24:2, 46:8
**comment** [1] - 42:1
**commit** [4] - 29:23, 31:17, 47:22
**committing** [1] - 11:15
**common** [2] - 24:13, 49:7
**communication** [1] - 26:15
**companies** [5] - 8:13, 10:3, 20:2, 20:9, 20:22
**COMPANY** [1] - 1:3
**company** [10] - 5:11, 12:16, 20:2, 20:11, 20:16, 44:11, 44:15, 44:16, 45:17, 46:1
**Company** [3] - 1:15, 1:19, 3:8
**company's** [1] - 8:23
**compare** [1] - 20:5
**compel** [3] - 46:17, 50:6, 50:7
**compensation** [1] - 19:11
**complaint** [27] - 9:3, 12:5, 18:13, 18:16, 18:22, 19:7, 19:9, 25:8, 30:13, 32:7, 33:2, 33:6, 33:19, 33:20, 33:25, 34:6, 34:10, 34:14, 35:1, 35:6, 35:7, 35:21, 36:6, 36:12, 47:1, 48:5, 48:9
**complaints** [2] - 13:24, 43:2
**completely** [4] - 11:20, 17:3, 41:15, 47:9
**complex** [1] - 49:19
**CompuCredit** [8] - 5:16, 21:22, 22:6, 22:16, 22:23, 22:24, 24:15, 40:7
**Computer** [1] - 2:20
**Computer-aided** [1] - 2:20
**computerized** [1] - 2:20
**concern** [1] - 18:8
**concerted** [1] - 25:10
**conclusively** [1] - 17:20
**conduct** [5] - 10:16, 25:9, 25:10, 26:12, 26:14
**configurations** [1] - 50:1
**Congress** [1] - 13:21, 47:5
**connect** [1] - 26:11
**connected** [2] - 25:3, 25:4
**connection** [5] - 14:8, 15:22, 25:22, 26:4, 27:1
**CONROY** [1] - 2:10
**consent** [1] - 7:17
**consider** [1] - 42:16
**consistent** [3] - 25:9, 38:25, 49:11

**consistently** [1] - 16:14
**consists** [1] - 39:7
**conspiracy** [1] - 27:16
**constituting** [1] - 34:7
**consumer** [7] - 6:3, 6:5, 6:9, 6:11, 6:16, 22:25, 23:6
**contain** [1] - 49:16
**contained** [1] - 5:3
**contains** [1] - 5:25
**contemplated** [1] - 39:16
**contention** [1] - 14:21
**context** [3] - 18:1, 18:2, 47:2
**continue** [2] - 31:5, 31:13
**Continued** [1] - 2:1
**continued** [1] - 32:3
**continuing** [1] - 32:2
**continuity** [13] - 31:2, 31:4, 31:7, 31:9, 31:20, 31:22, 31:24, 32:6, 32:9, 40:4, 47:21, 47:22, 47:23
**contract** [3] - 23:19, 42:11, 48:23
**contracts** [1] - 42:14
**contractually** [1] - 7:5
**contradict** [1] - 8:19
**contrary** [3] - 16:12, 25:8, 47:15
**control** [1] - 11:25
**controversy** [4] - 7:16, 7:17, 7:19, 44:22
**coordination** [1] - 49:19
**copies** [1] - 34:1
**copyright** [1] - 25:17
**corollary** [1] - 19:3
**corporate** [6] - 28:4, 29:13, 29:19, 29:22, 30:6, 47:11
**corporation** [4] - 10:8, 14:1, 29:12
**corporations** [6] - 14:2, 29:14, 29:15, 30:5, 31:16, 41:10
**correct** [4] - 12:24, 29:11, 35:10, 51:3
**correctly** [1] - 36:14
**Corrupt** [1] - 6:22
**cost** [1] - 7:3
**costs** [1] - 17:15
**costume** [1] - 25:24
**costumes** [3] - 25:23, 25:25, 26:3
**couched** [1] - 12:15
**counsel** [3] - 21:14, 40:15, 46:21
**Counsel** [1] - 3:9
**count** [1] - 48:3
**countenance** [1] - 42:19
**Country** [1] - 23:10
**Country-Wide** [1] - 23:10
**counts** [2] - 29:11, 48:4
**County** [2] - 26:5, 26:6
**couple** [2] - 21:20, 32:22
**course** [3] - 8:5, 30:19, 32:21
**court** [7] - 3:1, 6:7, 6:14, 7:6, 26:4, 32:13, 41:2
**Court** [33] - 2:7, 2:17, 2:17, 3:3, 4:25, 5:16, 6:8, 6:19, 7:1, 7:7, 9:18, 10:12, 10:24, 11:15, 15:2, 15:10, 15:14, 16:4, 17:20, 19:24, 28:5, 31:25, 32:20, 35:20, 36:19, 39:22, 41:12, 41:15, 41:16, 41:19, 42:10, 49:9, 51:9
**Court's** [2] - 21:1, 27:8
**Courthouse** [1] - 1:5
**COURTROOM** [2] - 3:2, 3:6

**courts** [7] - 5:22, 13:13, 13:20, 16:14, 34:2, 36:23, 40:18
**covering** [1] - 5:18
**create** [1] - 6:14
**created** [3] - 6:17, 6:21, 14:23
**creates** [1] - 6:9
**creation** [1] - 6:17
**credit** [2] - 6:1, 22:25
**Credit** [1] - 6:2
**CRI** [2] - 2:17, 51:8
**crimes** [1] - 11:15
**criminal** [6] - 8:23, 14:12, 15:16, 31:1, 31:6, 32:2
**criminals** [1] - 11:10
**CRR** [2] - 2:17, 51:8
**crux** [1] - 10:4
**culpable** [1] - 10:16
**current** [1] - 32:6

# D

**damages** [1] - 7:2
**date** [2] - 33:15, 48:6
**days** [7] - 17:5, 17:17, 17:18, 20:18, 38:11, 38:18, 42:20
**dead** [1] - 22:21
**deadlines** [1] - 17:22
**deal** [3] - 23:9, 24:10, 50:10
**dealing** [3] - 11:9, 13:9, 37:10
**dealt** [2] - 22:10, 27:5
**decent** [1] - 14:18
**decide** [1] - 46:18
**decided** [5] - 16:10, 22:3, 23:11, 48:18, 48:20
**deciding** [1] - 26:2
**decision** [2] - 21:22, 22:6, 22:14, 28:6
**decisions** [1] - 25:20
**defeats** [1] - 47:14
**defendant** [4] - 11:24, 29:18, 29:20, 30:20
**defendant's** [1] - 47:16
**defendants** [37] - 1:9, 3:17, 3:25, 4:2, 10:17, 14:7, 14:10, 14:20, 20:24, 25:6, 25:9, 25:11, 25:13, 26:19, 26:20, 27:12, 31:13, 33:4, 33:9, 33:15, 33:24, 34:13, 34:19, 34:23, 35:12, 35:15, 35:19, 36:8, 39:15, 42:23, 47:14, 48:25, 49:3, 49:7, 49:14, 49:19
**Defendants** [3] - 2:2, 2:11
**defense** [2] - 8:1, 40:15
**defer** [1] - 24:20
**deficiency** [1] - 37:18
**deficient** [1] - 34:14
**defines** [1] - 10:7
**definition** [1] - 15:10
**defraud** [2] - 30:9, 30:22
**defrauded** [1] - 16:18
**delineates** [1] - 34:5
**delivery** [1] - 49:15
**demonstrates** [1] - 17:7
**demonstrating** [1] - 31:8
**denied** [3] - 46:19, 48:25, 50:5
**deny** [1] - 17:2

**DEPUTY** [2] - 3:2, 3:6
**describe** [2] - 6:11, 7:7
**describes** [1] - 8:16
**description** [1] - 46:24
**detail** [3] - 8:14, 33:20, 34:12
**details** [1] - 36:11
**determination** [5] - 18:4, 18:21, 18:22, 38:12, 38:25
**determine** [2] - 18:9, 45:23
**determined** [1] - 46:10
**determines** [1] - 46:2
**devices** [1] - 28:14
**devoted** [1] - 6:16
**difference** [2] - 22:23, 24:8
**differences** [1] - 25:12
**different** [13] - 4:20, 19:25, 24:11, 25:24, 26:7, 26:9, 26:10, 27:1, 27:2, 30:2, 41:16, 42:15
**Diglio** [4] - 4:2, 27:13, 34:23, 35:13
**DIGLIO** [24] - 2:10, 2:15, 4:2, 9:22, 9:25, 10:25, 11:5, 11:11, 11:20, 11:24, 12:4, 13:12, 13:24, 14:9, 14:13, 14:15, 14:17, 14:21, 15:4, 15:16, 15:24, 19:2, 20:25, 50:13
**diligence** [5] - 16:17, 16:18, 18:3, 38:17, 38:19
**diligent** [1] - 20:16
**directs** [1] - 8:11
**disagree** [1] - 18:19
**disagreement** [1] - 5:14
**disconnected** [1] - 25:7
**discuss** [1] - 17:4
**disingenuous** [1] - 41:6
**dismiss** [6] - 10:1, 27:14, 36:17, 38:5, 38:8, 47:19
**dismissed** [3] - 17:8, 18:17, 27:4
**dispute** [9] - 7:13, 23:6, 42:25, 43:3, 43:4, 44:22, 45:7, 45:8, 46:8
**disputes** [1] - 41:1
**dissolved** [1] - 31:19
**distinct** [5] - 10:5, 10:16, 13:4, 13:5, 47:8
**distinction** [7] - 27:25, 28:7, 30:5, 30:12, 34:15, 39:11, 41:9
**distinctness** [1] - 47:14
**distinguish** [1] - 41:24
**district** [3] - 12:9, 34:3, 40:19
**District** [3] - 3:3, 7:1
**DISTRICT** [3] - 1:1, 1:1, 1:12
**DME** [2] - 28:14, 33:16
**Docket** [1] - 3:7
**document** [1] - 37:7
**documents** [5] - 29:4, 33:15, 36:4, 36:16, 37:16
**dollars** [2] - 20:10, 20:11
**done** [4] - 7:9, 9:16, 15:15, 16:19
**down** [11] - 5:6, 5:7, 8:4, 13:10, 14:14, 21:23, 27:19, 28:6, 31:19, 45:14, 49:23
**drafted** [1] - 15:8
**drug** [1] - 11:9
**drug-dealing** [1] - 11:9
**drugs** [1] - 13:9
**due** [5] - 16:16, 16:18, 18:3, 38:16, 38:19
**duration** [2] - 32:10, 32:19

**during** [1] - 48:16
**duties** [1] - 8:24
**dutifully** [1] - 39:3

## E

**E-mail** [1] - 2:19
**earth** [1] - 17:6
**Eastern** [1] - 3:3
**EASTERN** [1] - 1:1
**economy** [1] - 26:24
**EDWARD** [1] - 2:15
**Edward** [1] - 4:4
**efficiency** [1] - 50:2
**efforts** [2] - 28:24, 29:1
**either** [1] - 5:3
**elaborates** [1] - 10:12
**elect** [1] - 42:3
**election** [1] - 23:5
**element** [1] - 11:13
**elemental** [1] - 37:14
**elements** [2] - 11:18, 16:2
**eliminate** [1] - 9:13
**eliminated** [1] - 9:9
**elsewhere** [3] - 6:12, 6:17, 6:18
**emphasize** [2] - 5:12, 15:25
**employees** [1] - 30:7
**enacted** [2] - 5:19, 9:6
**encouraged** [1] - 49:13
**end** [2] - 20:3, 32:18
**ended** [7] - 31:4, 31:7, 31:20, 32:9, 40:3, 47:21
**endorsement** [1] - 9:7
**enforce** [3] - 5:22, 9:14, 22:9
**enforceable** [2] - 5:1, 7:12
**enforced** [2] - 6:6, 6:20
**enforcement** [3] - 8:22, 8:24, 32:12
**engaged** [1] - 30:21
**engages** [2] - 10:15, 10:21
**enhance** [1] - 15:25
**enrichment** [4] - 24:14, 40:16, 40:20, 48:21, 48:22
**ensure** [1] - 29:1
**enterprise** [30] - 10:5, 10:13, 10:18, 10:22, 11:6, 11:7, 11:13, 11:19, 11:21, 12:11, 12:12, 12:18, 13:5, 15:7, 15:10, 27:15, 27:25, 28:3, 28:4, 28:8, 29:7, 30:2, 30:10, 30:11, 31:1, 32:11, 35:5, 47:7, 47:9, 47:11
**enterprise's** [1] - 47:15
**enterprises** [6] - 11:4, 28:11, 28:21, 29:8, 29:10, 30:4
**entertaining** [1] - 49:10
**entities** [6] - 29:13, 29:16, 29:19, 29:22, 42:23, 47:22
**entitled** [4] - 39:5, 41:11, 43:1, 51:4
**entity** [8] - 10:9, 10:11, 10:19, 12:20, 28:4, 33:10, 47:11
**epitome** [1] - 47:20
**equation** [1] - 13:2
**equipment** [3] - 17:14, 17:15, 26:21
**Equipment** [2] - 2:5, 3:21
**ESQ** [7] - 1:17, 1:21, 1:22, 2:8, 2:9, 2:15, 2:15

**essence** [1] - 27:3
**establishes** [1] - 5:21
**ET** [2] - 1:3, 1:8
**et** [8] - 1:15, 1:19, 3:8, 10:9, 17:15, 17:16
**eternity** [1] - 44:18
**event** [3] - 5:4, 45:16, 47:4
**evidence** [1] - 39:2
**evil** [1] - 14:7
**exactly** [3] - 15:15, 19:16, 24:7
**example** [3] - 19:4, 20:9, 44:14
**examples** [2] - 33:3, 33:18
**exceeds** [1] - 7:10
**except** [2] - 13:24, 40:16
**exchange** [2] - 28:22, 28:23
**excuse** [1] - 47:21
**excused** [1] - 38:16
**exerted** [3] - 11:25, 28:24, 29:1
**exhibits** [7] - 33:6, 33:7, 33:12, 33:19, 34:12, 36:11, 48:5
**exist** [10] - 10:13, 12:20, 13:1, 13:3, 19:11, 19:19, 28:11, 28:17, 29:8, 37:25
**existed** [1] - 13:11
**existence** [1] - 14:3
**exists** [2] - 12:16, 12:21
**expeditiously** [1] - 42:6
**explained** [2] - 25:10, 26:14
**explains** [1] - 10:13
**explanation** [1] - 26:15
**extent** [10] - 21:17, 27:23, 29:17, 29:25, 30:14, 33:24, 34:4, 34:13, 38:3, 50:9
**extinguished** [1] - 44:13
**eyes** [1] - 20:13

## F

**FAA** [1] - 45:6
**face** [8] - 17:17, 18:25, 37:7, 37:12, 37:13, 37:19, 38:11, 38:13
**facial** [2] - 18:23, 19:14
**facially** [7] - 18:15, 19:14, 36:21, 36:24, 36:25, 37:3, 37:6
**Facsimile** [1] - 2:18
**fact** [22] - 10:10, 11:4, 11:9, 11:18, 12:14, 18:12, 18:19, 18:25, 21:15, 22:9, 22:13, 24:16, 27:15, 28:3, 32:18, 36:17, 39:2, 44:2, 47:10, 48:19, 49:6
**facts** [2] - 27:12, 40:1
**factual** [1] - 18:21
**fail** [3] - 27:24, 30:1, 34:1
**failed** [3] - 10:5, 27:24, 33:22
**fails** [3] - 29:9, 33:25, 48:22
**failure** [2] - 30:16, 47:6
**Fair** [2] - 41:16, 41:23
**fairness** [1] - 49:11
**falls** [1] - 42:22
**false** [1] - 18:15
**FAPR** [2] - 2:17, 51:8
**far** [3] - 7:9, 11:1, 22:5
**fashion** [1] - 41:20
**fault** [20] - 5:3, 16:5, 16:13, 16:20, 17:22, 17:23, 20:18, 22:1, 23:13, 23:18, 24:10, 28:21, 28:24, 29:2, 31:14, 31:17,

(favor - insurer)                                                                    Page 5

37:1, 38:22, 42:2, 42:4
**favor** [1] - 15:18
**favoring** [1] - 5:21
**FAZIO** [1] - 2:10
**February** [1] - 1:7
**Federal** [2] - 5:19, 49:1
**federal** [2] - 5:21, 6:6
**fee** [5] - 19:5, 19:6, 19:8, 19:11, 41:1
**few** [1] - 25:23
**file** [2] - 22:8, 46:22
**filed** [2] - 32:7, 35:6
**filled** [1] - 35:7
**finally** [2] - 10:18, 43:5
**Financial** [1] - 1:16
**fine** [1] - 23:1
**finish** [2] - 14:14, 14:16
**finished** [2] - 24:12, 45:3
**firm** [1] - 4:4
**First** [2] - 15:1, 15:6
**first** [22] - 4:18, 4:20, 5:5, 7:22, 7:23,
21:11, 23:22, 27:11, 27:23, 35:7, 35:21,
39:18, 42:21, 42:24, 43:7, 43:17, 44:18,
44:20, 45:9, 45:17, 45:22
**first-party** [10] - 5:5, 7:22, 7:23, 23:22,
39:18, 42:24, 43:7, 43:17, 45:9, 45:17
**five** [2] - 21:2, 45:15
**focus** [1] - 21:20
**fold** [1] - 7:2
**followed** [1] - 32:22
**following** [2] - 5:17, 5:25
**FOR** [1] - 1:11
**foregoing** [1] - 51:3
**form** [1] - 39:4
**formed** [2] - 12:6, 31:17
**forms** [1] - 49:16
**forth** [6] - 8:12, 17:23, 23:20, 24:21,
35:23, 39:1
**forum** [2] - 27:5, 46:9
**forward** [1] - 32:7
**four** [1] - 16:10
**framework** [1] - 8:12
**Franklin** [1] - 2:13
**fraud** [36] - 8:14, 8:15, 12:2, 12:10,
12:12, 12:15, 12:19, 13:14, 13:15,
13:23, 14:4, 14:9, 14:24, 16:12, 16:19,
22:10, 23:9, 24:14, 27:10, 29:23, 30:16,
31:17, 33:2, 33:23, 33:25, 34:21, 35:18,
35:24, 36:7, 41:19, 47:15, 47:23, 48:1,
48:4, 48:14
**fraud-based** [1] - 12:10
**fraudulent** [17] - 9:2, 17:21, 25:9,
26:13, 28:13, 28:16, 28:25, 30:23,
30:24, 33:3, 33:17, 34:7, 34:9, 34:11,
35:23, 39:4, 43:2
**fraudulently** [1] - 12:7
**Frisolone** [2] - 2:17, 51:8
**frivolous** [1] - 48:12
**furtherance** [1] - 30:8
**future** [2] - 31:5, 31:9

**G**

**game** [1] - 48:18
**game's** [1] - 17:24

**Gammerman** [2] - 22:4, 24:7
**garden** [2] - 12:15, 13:22
**Garden** [1] - 2:14
**GARY** [1] - 2:9
**general** [3] - 16:12, 16:19, 47:1
**generally** [1] - 49:20
**Generis** [1] - 15:9
**Gibbs** [1] - 49:8
**Gleeson** [2] - 3:4, 3:5
**GLEESON** [1] - 1:12
**GNK** [12] - 2:11, 4:3, 10:3, 11:22,
11:25, 12:6, 12:25, 27:18, 30:9, 30:18,
35:4
**Goettel** [1] - 23:12
**governed** [1] - 41:16
**governing** [1] - 16:12
**Government** [1] - 15:12
**Grand** [2] - 2:3, 3:20
**granted** [1] - 16:15
**great** [1] - 15:19
**Griesa** [1] - 23:11
**griping** [1] - 13:19
**group** [1] - 10:10
**guys** [1] - 11:15

**H**

**H.J** [1] - 13:18
**halted** [1] - 31:6
**hand** [1] - 27:21
**handed** [1] - 28:5
**happy** [1] - 18:7
**Harnett** [1] - 23:10
**haste** [1] - 17:5
**hear** [3] - 8:1, 8:3, 18:1
**heard** [6] - 4:18, 4:20, 4:21, 22:7, 24:5,
45:1
**hearing** [1] - 22:16
**held** [2] - 31:25
**hello** [1] - 3:11
**help** [1] - 24:15
**High** [9] - 4:3, 10:3, 11:22, 12:6, 27:18,
30:10, 30:20, 35:5
**Highlawn** [1] - 2:11
**hire** [1] - 38:17
**hold** [1] - 17:17
**holds** [1] - 12:9
**Honor** [59] - 3:15, 3:24, 4:10, 4:12,
4:17, 4:19, 4:24, 7:21, 7:24, 8:4, 8:9,
11:20, 12:14, 19:22, 20:15, 20:25, 21:1,
21:6, 21:9, 21:14, 21:19, 27:6, 27:8,
29:12, 29:20, 29:24, 29:25, 31:11,
31:23, 32:14, 32:20, 33:1, 35:10, 36:14,
36:22, 37:21, 37:22, 38:3, 38:10, 38:20,
39:12, 39:20, 39:21, 40:6, 40:11, 40:14,
40:22, 40:25, 43:11, 43:15, 43:21, 45:1,
45:4, 45:6, 45:12, 45:14, 45:19, 45:22,
46:16
**HONORABLE** [1] - 1:12
**Honorable** [2] - 3:4, 3:5
**hostility** [1] - 5:20
**hundred** [1] - 20:10
**hundreds** [5] - 20:2, 28:12, 37:10,
37:11, 38:11

**hypothetical** [1] - 39:23

**I**

**identical** [2] - 49:15, 49:20
**identified** [1] - 34:17
**illegal** [1] - 47:13
**illegitimate** [1] - 15:7
**illustrated** [1] - 25:7
**Ilya** [2] - 2:6, 3:19
**imbalance** [1] - 42:4
**impair** [1] - 8:19
**import** [1] - 42:1
**important** [3] - 22:6, 28:20, 41:8
**improper** [1] - 26:19
**improperly** [1] - 26:8
**impulses** [1] - 49:10
**Inc** [11] - 2:3, 2:3, 2:4, 2:4, 2:5, 2:5,
2:11, 2:12, 2:12
**Inc.s** [1] - 29:16
**incidentally** [1] - 8:21
**include** [3] - 10:8, 34:1, 34:24
**included** [6] - 21:24, 28:20, 33:16,
33:17, 33:20, 34:9
**includes** [1] - 33:13
**including** [1] - 45:20
**incorrect** [1] - 34:16
**incorrectly** [1] - 19:10
**independent** [3] - 24:17, 25:20, 26:14
**indicate** [1] - 35:4
**indicated** [4] - 34:2, 36:14, 36:23, 39:1
**indications** [1] - 7:10
**indisputably** [1] - 31:19
**individual** [2] - 10:8, 30:11
**individuals** [1] - 10:10
**inflated** [1] - 28:23
**Influenced** [1] - 6:21
**inform** [2] - 8:22, 17:14
**information** [4] - 16:24, 17:10, 36:9,
39:2
**infringement** [1] - 25:17
**inherent** [1] - 47:8
**inherently** [1] - 18:14
**initial** [3] - 21:23, 21:24, 34:18
**initials** [2] - 33:8, 33:14
**initiate** [10] - 8:11, 8:20, 22:9, 22:12,
22:15, 22:18, 23:8, 23:13, 23:16, 39:5
**initiation** [1] - 8:18
**inject** [1] - 18:24
**injured** [2] - 6:23, 12:17
**instance** [2] - 25:16, 26:2
**instead** [2] - 41:23, 42:20
**institute** [1] - 24:9
**instructed** [1] - 49:10
**INSURANCE** [1] - 1:3
**insurance** [10] - 8:12, 8:15, 8:23,
12:18, 20:16, 20:21, 22:10, 37:5, 44:16,
46:1
**Insurance** [13] - 1:15, 1:19, 3:7, 5:16,
8:11, 9:1, 22:5, 22:20, 23:8, 23:25,
24:3, 43:23, 46:1
**insurer** [15] - 9:8, 16:21, 16:25, 17:2,
17:9, 19:17, 20:1, 20:19, 23:17, 36:3,
37:10, 38:12, 41:2, 42:25, 48:15

**insurers** [19] - 16:5, 22:8, 22:11, 22:15, 22:17, 22:21, 23:8, 23:13, 24:1, 24:13, 24:18, 26:7, 29:5, 36:15, 36:24, 37:2, 41:13, 41:25, 42:19
**insurers'** [3] - 8:19, 24:4, 48:19
**intend** [1] - 8:14
**intended** [1] - 30:25
**intensely** [2] - 18:11, 48:19
**interpreting** [1] - 6:13
**interrupt** [4] - 5:9, 32:24, 42:7, 43:10
**invoices** [1] - 28:23
**involved** [1] - 41:9
**irregularities** [1] - 49:16
**Island** [1] - 2:8
**issue** [21] - 4:20, 5:19, 8:9, 18:25, 21:11, 21:13, 21:15, 22:3, 23:1, 24:22, 32:14, 33:10, 36:16, 36:17, 38:4, 38:9, 40:7, 42:9, 43:19, 45:22, 49:22
**issues** [6] - 16:22, 23:5, 24:11, 27:9, 31:12, 40:15
**item** [3] - 20:6, 37:8, 37:9
**items** [6] - 19:4, 19:6, 19:8, 19:9, 33:16, 49:18
**itself** [1] - 48:17

## J

**Jamaica** [2] - 2:3, 3:20
**jobs** [1] - 13:9
**JOHN** [1] - 1:12
**John** [2] - 3:4, 3:5
**join** [1] - 4:15
**joinder** [4] - 24:24, 48:24, 49:2, 49:12
**joined** [3] - 3:22, 4:4, 49:1
**joint** [2] - 25:10, 26:15
**jointly** [1] - 49:4
**JUDGE** [1] - 1:12
**Judge** [2] - 22:4, 24:7
**judge** [1] - 17:1
**Judges** [1] - 23:11
**judicial** [2] - 5:20, 26:24
**justice** [2] - 11:10, 13:10
**justifiable** [1] - 18:17
**justifiably** [1] - 37:15
**justified** [1] - 17:13

## K

**keep** [1] - 41:21
**keeping** [1] - 50:3
**key** [2] - 22:22, 36:23
**Khaimov** [7] - 2:5, 2:6, 2:6, 3:8, 3:18
**KHAIMOV** [1] - 1:8
**kickbacks** [2] - 28:21, 28:22
**kind** [1] - 18:3
**knocking** [2] - 25:24, 26:3
**knowledge** [1] - 25:13

## L

**language** [17] - 5:2, 5:3, 5:4, 5:24, 5:25, 6:13, 7:8, 7:15, 7:20, 11:6, 11:11, 12:15, 15:17, 23:14, 42:22, 46:3

**Laperla** [2] - 2:3, 3:19
**last** [1] - 40:24
**laugh** [1] - 28:9
**Law** [12] - 8:11, 9:1, 20:18, 22:5, 22:20, 23:8, 23:25, 24:3, 31:14, 38:22, 42:2, 43:23
**law** [29] - 5:18, 6:11, 8:22, 8:24, 10:21, 11:1, 11:2, 12:8, 13:13, 14:19, 14:22, 17:6, 18:9, 18:17, 18:20, 18:24, 22:25, 24:13, 27:22, 32:12, 38:7, 38:21, 39:1, 40:1, 40:2, 41:11, 48:4, 48:20, 49:6
**law-abiding** [2] - 14:19, 14:22
**Lawn** [4] - 4:3, 10:3, 11:22, 12:6, 27:18, 30:10, 30:20, 35:5
**lawsuit** [4] - 23:2, 32:22, 32:23, 39:10
**lawsuits** [2] - 27:1, 27:2
**lawyer** [1] - 4:21
**lay** [1] - 48:5
**Layliev** [1] - 2:6
**leads** [1] - 20:15
**learned** [1] - 46:3
**least** [5] - 18:13, 18:16, 18:22, 19:7, 24:20
**leave** [2] - 18:21, 41:7
**left** [1] - 22:2
**legal** [4] - 10:9, 10:10, 28:3, 47:11
**legitimate** [2] - 13:8, 14:8
**less** [1] - 33:5
**letter** [1] - 16:22
**liability** [1] - 7:6
**liberal** [1] - 5:21
**lights** [1] - 21:8
**limitations** [2] - 48:11, 48:13
**lines** [2] - 17:22, 45:15
**listed** [2] - 4:8, 4:10
**litany** [1] - 43:2
**litigated** [1] - 41:2
**LLP** [2] - 1:14, 1:18
**logical** [5] - 25:21, 26:3, 26:10, 26:11, 26:25
**logically** [3] - 25:3, 25:4, 49:21
**look** [6] - 16:8, 20:4, 23:18, 23:20, 25:15, 37:25
**looked** [1] - 16:9
**looking** [1] - 32:10
**lookout** [1] - 13:13
**lost** [2] - 13:17, 13:18
**luck** [1] - 31:21
**Lumbard** [1] - 23:11
**Lyons** [9] - 21:15, 24:21, 25:16, 25:17, 25:23, 42:9, 46:23, 50:8

## M

**Maersk** [1] - 13:15
**mail** [8] - 2:19, 12:2, 12:19, 30:16, 33:1, 33:23, 33:25, 34:21
**mailing** [1] - 12:20
**Major** [1] - 2:12
**Mallela** [5] - 22:1, 24:16, 41:8, 41:9, 41:22
**mandatory** [1] - 9:7
**Maria** [1] - 4:2
**MARIA** [1] - 2:15

**mark** [1] - 47:9
**Market** [1] - 2:12
**materially** [1] - 28:13
**matter** [21] - 5:12, 5:13, 15:22, 18:9, 18:17, 18:20, 18:24, 26:24, 32:1, 38:7, 38:19, 38:20, 41:11, 45:8, 45:18, 45:20, 47:4, 48:20, 50:18, 51:4
**Max** [1] - 3:21
**MAX** [1] - 2:8
**McMahon** [1] - 6:19
**mean** [9] - 11:6, 11:22, 23:2, 25:15, 27:4, 32:17, 37:6, 43:25, 44:1
**meaning** [1] - 47:12
**means** [1] - 16:22
**meant** [1] - 6:10
**Medical** [16] - 2:3, 2:3, 2:4, 2:5, 2:11, 2:12, 3:19, 3:20, 4:3, 4:5, 30:9, 30:10
**medical** [6] - 12:16, 14:2, 28:16, 28:25, 29:1, 44:11
**Memorandum** [1] - 50:8
**mention** [1] - 24:23
**Merchandise** [1] - 2:12
**merely** [1] - 26:2
**merit** [4] - 35:1, 47:18, 48:4, 48:10
**methods** [1] - 26:13
**Michael** [1] - 2:12
**might** [3] - 19:2, 38:7, 44:1
**Mine** [1] - 49:8
**minimum** [1] - 37:14
**ministerial** [1] - 46:4
**minutes** [1] - 21:2
**miscoded** [1] - 19:9
**misleading** [1] - 18:15
**misrepresent** [1] - 28:14
**misrepresentation** [3] - 19:15, 19:17, 33:7
**misrepresentations** [4] - 33:4, 33:17, 34:10, 35:23
**misses** [1] - 47:9
**moment** [1] - 50:2
**money** [6] - 20:20, 26:3, 39:6, 41:13, 45:21, 45:23
**MONTANA** [1] - 1:18
**months** [3] - 31:18, 31:25, 32:22
**morning** [8] - 3:12, 3:13, 3:23, 3:24, 4:1, 4:5, 21:6, 21:9
**motion** [17] - 4:16, 8:2, 9:23, 10:4, 12:25, 17:13, 18:6, 21:4, 25:7, 36:16, 36:18, 38:5, 38:8, 46:17, 47:19, 50:6, 50:7
**motions** [4] - 9:21, 46:19, 46:25, 49:24
**moved** [2] - 10:1, 27:13
**moving** [5] - 3:17, 4:6, 4:13, 20:24, 49:14
**MR. STERN** [4] - 4:17, 31:23, 32:9, 32:17, 39:21, 39:25, 50:12
**MS** [43] - 3:13, 3:15, 4:2, 9:22, 9:25, 10:25, 11:5, 11:11, 11:20, 11:24, 12:4, 13:12, 13:24, 14:9, 14:13, 14:15, 14:17, 14:21, 15:4, 15:16, 15:24, 19:2, 20:25, 27:8, 29:12, 29:15, 29:19, 29:24, 31:10, 33:1, 35:10, 36:22, 37:5, 37:21, 38:3, 38:10, 38:19, 39:12, 39:20, 40:14, 40:22, 50:13, 50:14
**Murdakhay** [2] - 2:6, 3:18

**music** [2] - 25:19, 25:21
**must** [7] - 8:13, 8:14, 10:13, 10:15, 17:21, 18:24, 43:20

## N

**name** [1] - 33:10
**naming** [1] - 30:6
**Nassau** [2] - 26:5, 26:6
**NATBONY** [10] - 1:17, 4:7, 4:10, 21:6, 21:9, 21:13, 26:23, 40:6, 40:11, 50:15
**Natbony** [2] - 3:16, 39:1
**nature** [2] - 17:15, 25:7
**necessary** [2] - 7:8, 29:3
**need** [4] - 17:2, 29:1, 44:17, 44:19
**neglects** [1] - 17:4
**negligence** [1] - 18:3
**negligent** [2] - 20:19, 20:21
**never** [2] - 13:25, 41:10
**NEW** [1] - 1:1
**new** [1] - 44:19
**New** [10] - 1:5, 1:16, 1:21, 2:4, 2:8, 2:14, 3:3, 3:21
**next** [1] - 44:21
**No-fault** [13] - 16:5, 17:22, 17:23, 20:18, 22:1, 23:13, 23:18, 24:10, 31:14, 37:1, 38:22, 42:2, 42:4
**no-fault** [7] - 5:3, 16:13, 16:20, 28:21, 28:24, 29:2, 31:17
**non** [1] - 19:6
**non-fee** [1] - 19:6
**none** [3] - 26:4, 29:18, 29:19
**nonetheless** [1] - 37:19
**normal** [1] - 22:1
**note** [2] - 3:9, 28:20
**noted** [2] - 27:11, 35:11
**nothing** [4] - 13:15, 20:18, 47:13, 50:2
**notice** [2] - 6:16, 34:20
**notify** [1] - 9:1
**nowhere** [1] - 25:11
**number** [11] - 26:6, 26:17, 26:18, 28:2, 28:5, 30:4, 30:18, 34:18, 35:3, 36:1, 48:6
**numbers** [2] - 33:8, 33:14

## O

**objection** [1] - 4:15
**obligation** [3] - 8:21, 8:25, 18:3
**obligations** [2] - 38:21, 41:18
**obstructing** [2] - 11:10, 13:10
**obstructing-of-justice** [1] - 11:10
**obtain** [2] - 28:24, 29:3
**obviously** [3] - 8:24, 21:24, 49:17
**occurred** [1] - 31:3
**occurrence** [2] - 25:2, 49:5
**occurrences** [2] - 35:3, 49:6
**October** [1] - 21:14
**OF** [3] - 1:1, 1:11, 51:2
**Official** [2] - 2:17, 51:9
**once** [3] - 24:12, 44:17, 49:23
**one** [18] - 8:17, 21:7, 27:5, 28:2, 30:4, 30:10, 30:18, 31:16, 34:22, 35:3, 36:23, 39:21, 41:22, 42:2, 46:14, 47:13, 49:2

**One** [1] - 1:16
**ones** [1] - 37:6
**ongoing** [2] - 10:15, 32:2
**open** [7] - 3:1, 31:4, 31:7, 31:24, 32:9, 40:3, 47:21
**open-ended** [5] - 31:4, 31:7, 32:9, 40:3, 47:21
**opinion** [1] - 46:22
**opportunity** [3] - 16:15, 16:16, 21:21
**opposition** [1] - 12:25
**option** [3] - 5:14, 46:11
**oral** [2] - 3:6, 21:16
**ORAL** [1] - 1:11
**order** [2] - 29:5, 42:5
**Order** [1] - 50:9
**ordinary** [1] - 13:15
**organization** [2] - 6:2, 10:16
**Organization** [1] - 6:3
**Organizations** [1] - 6:22
**organize** [1] - 11:25
**original** [2] - 35:6, 39:3
**orthotic** [1] - 28:14
**otherwise** [2] - 6:16, 40:23
**outside** [1] - 22:1
**outstanding** [1] - 17:8
**overall** [1] - 34:7
**overarching** [1] - 38:22
**overbilling** [1] - 9:2
**overcharging** [1] - 9:2
**overrule** [2] - 10:23, 42:3
**overworked** [1] - 41:6
**own** [3] - 36:4, 42:22, 45:6
**owners** [2] - 30:6, 30:12

## P

**P.C** [4] - 2:2, 2:10, 3:22, 14:1
**P.C.s** [2] - 14:2, 29:11
**paid** [12] - 22:2, 28:21, 28:22, 39:9, 39:13, 41:12, 42:6, 42:17, 43:18, 44:2, 44:12, 45:21
**papers** [6] - 21:17, 21:18, 21:21, 21:23, 21:24, 34:24
**Paragraphs** [1] - 12:5
**parking** [1] - 40:24
**Parsons** [2] - 2:4, 3:19
**part** [5] - 6:22, 8:16, 9:25, 45:22, 48:3
**participated** [2] - 30:7, 30:23
**participation** [1] - 35:4
**particular** [5] - 29:16, 34:4, 37:8, 37:9, 47:3
**particularity** [5] - 34:4, 34:6, 34:21, 35:24, 36:6
**particularized** [1] - 34:11
**parties** [5] - 4:6, 7:17, 44:23, 49:12
**partner** [1] - 4:4
**partnership** [1] - 10:8
**party** [14] - 5:5, 7:22, 7:23, 16:15, 23:22, 39:18, 42:2, 42:24, 43:7, 43:17, 45:9, 45:16, 45:17
**patent** [1] - 37:18
**pattern** [14] - 9:2, 10:14, 10:19, 10:20, 11:13, 11:17, 27:25, 28:8, 30:21, 32:8, 32:18, 47:9, 47:17

**patterns** [1] - 26:13
**pay** [7] - 16:10, 17:2, 20:12, 20:13, 38:25, 42:5, 42:20
**paying** [1] - 30:23
**payment** [2] - 41:4, 42:24
**pays** [1] - 20:19
**pending** [2] - 24:10, 36:19
**people** [5] - 15:12, 25:18, 25:20, 30:7, 38:17
**People** [1] - 13:18
**perfectly** [1] - 9:11
**perhaps** [1] - 19:25
**period** [3] - 31:3, 31:20, 48:13
**permission** [2] - 21:2, 27:9
**perpetrate** [3] - 12:11, 14:4, 14:23
**person** [9] - 5:4, 5:13, 6:7, 6:23, 30:2, 39:17, 43:7, 43:12, 43:14
**persons** [4] - 11:25, 12:16, 30:6, 30:12
**perspective** [1] - 37:5
**persuaded** [1] - 18:4
**pertains** [2] - 37:8, 37:9
**phantom** [4] - 26:17, 26:18, 37:24, 49:18
**pick** [1] - 9:12
**place** [1] - 6:15
**plaintiff** [3] - 8:3, 34:5, 49:16
**plaintiff's** [4] - 30:15, 33:25, 35:17, 40:12
**Plaintiffs** [4] - 1:4, 1:14, 1:15, 1:19
**plaintiffs** [25] - 3:15, 8:10, 12:5, 12:24, 12:25, 14:5, 14:23, 27:15, 27:16, 27:18, 27:24, 28:2, 28:10, 28:20, 30:19, 30:22, 33:10, 33:22, 34:1, 34:9, 36:4, 37:13, 37:15, 48:22, 50:1
**plaintiffs'** [1] - 36:6
**plan** [4] - 8:13, 8:14, 26:10, 26:15
**play** [1] - 17:11
**plead** [10] - 10:5, 27:16, 27:17, 27:19, 28:2, 30:16, 33:23, 47:7, 48:16, 48:22
**pleaded** [1] - 47:19
**pleading** [2] - 35:17, 37:15
**pleadings** [7] - 27:10, 27:24, 30:17, 31:10, 33:2, 33:3, 48:1
**pled** [7] - 9:3, 27:14, 28:3, 30:13, 34:22, 36:8, 37:13
**point** [4] - 19:24, 25:11, 40:25, 50:4
**policy** [3] - 5:3, 5:21, 41:17
**portal** [1] - 25:18
**portion** [3] - 9:16, 17:4, 18:22
**pose** [1] - 31:5
**possible** [3] - 49:11, 49:25
**posture** [1] - 39:16
**precise** [1] - 14:25
**precludes** [1] - 41:23
**predicate** [5] - 33:13, 33:20, 34:12, 34:14, 36:11
**predispute** [1] - 7:11
**prefer** [1] - 40:7
**prejudice** [2] - 49:25
**prescription** [2] - 7:6, 44:15
**prescriptions** [3] - 28:22, 28:24, 29:3
**presiding** [1] - 3:4
**pretty** [1] - 19:7
**prevailing** [2] - 40:1, 40:2
**previous** [2] - 24:21

**Price** [2] - 41:16, 41:23
**price** [3] - 37:9, 42:5, 43:13
**principle** [1] - 15:9
**principles** [2] - 16:12, 16:13
**problem** [9] - 11:12, 12:4, 22:20, 23:24, 24:1, 26:9, 38:1, 44:1, 47:15
**problems** [1] - 14:6
**Procedure** [1] - 49:2
**procedures** [2] - 5:15, 17:23
**proceeding** [4] - 9:5, 24:2, 24:9, 25:5
**proceedings** [2] - 23:16, 51:4
**Proceedings** [1] - 2:20
**process** [4] - 22:2, 24:12, 38:11, 38:14
**processed** [1] - 39:4
**processing** [1] - 37:10
**produced** [1] - 2:20
**professional** [4] - 14:2, 29:14, 29:15, 41:10
**Progressive** [3] - 22:4, 24:7, 24:17
**promptly** [2] - 38:21, 38:23
**promulgated** [3] - 5:15, 9:7, 23:21
**pronounced** [1] - 15:9
**proof** [1] - 11:17
**properly** [5] - 30:16, 48:16, 48:17, 49:1, 49:23
**property** [1] - 6:24
**proposition** [1] - 42:19
**prosecute** [2] - 8:24, 22:12
**prosecution** [1] - 31:6
**protection** [2] - 6:4, 6:11
**protocol** [2] - 28:16, 28:25
**prove** [1] - 11:16
**provide** [2] - 7:8, 12:16
**provided** [5] - 6:4, 28:14, 28:15, 28:16
**provider** [3] - 16:24, 17:7, 44:11
**provides** [5] - 6:12, 22:8, 33:8, 36:9, 36:10
**providing** [1] - 29:2
**provision** [9] - 5:21, 6:21, 9:6, 9:7, 23:15, 24:6, 39:17, 42:3, 42:18
**provisions** [2] - 23:13, 23:20
**purely** [1] - 15:7
**purpose** [10] - 12:6, 12:7, 12:11, 13:25, 14:3, 29:22, 30:22, 38:22, 47:15, 47:22
**purposes** [1] - 12:13
**pursuant** [3] - 5:15, 28:16, 28:25
**purview** [1] - 42:18
**put** [1] - 26:17
**puts** [1] - 22:13

## Q

**qualify** [1] - 14:12
**Queens** [2] - 2:4, 3:20
**questioned** [1] - 45:11
**questioning** [1] - 45:19
**questions** [1] - 18:23
**quintessentially** [1] - 18:4
**quote** [1] - 13:14

## R

**Racketeer** [1] - 6:21

**racketeering** [19] - 10:19, 12:1, 12:19, 12:23, 13:1, 13:4, 13:5, 13:11, 28:1, 28:8, 28:11, 28:12, 29:7, 30:8, 30:21, 30:24, 32:21, 47:24
**raised** [3] - 27:9, 40:15, 40:17
**rather** [1] - 25:11
**rational** [1] - 26:15
**RDR** [2] - 2:17, 51:8
**read** [5] - 6:22, 13:21, 13:25, 15:23, 21:19
**real** [2] - 24:25, 25:21
**realized** [1] - 16:11
**really** [6] - 10:4, 13:15, 26:25, 45:14, 46:4, 47:4
**realm** [1] - 36:18
**reason** [8] - 6:24, 8:22, 21:16, 25:13, 32:5, 32:11, 36:25, 37:1
**reasonable** [6] - 18:11, 36:3, 36:15, 37:22, 38:8, 48:16
**reasonableness** [4] - 17:25, 18:2, 38:4, 48:19
**reasoning** [1] - 46:24
**reasons** [3] - 26:9, 32:12, 36:5
**receipts** [1] - 49:15
**receive** [6] - 6:10, 17:10, 20:6, 20:8, 20:10, 44:10
**received** [3] - 16:7, 16:9, 42:24
**receives** [7] - 20:1, 20:4, 20:17, 41:3, 44:11, 44:15, 44:17
**receiving** [1] - 20:3
**recognize** [2] - 24:4, 24:8
**recognized** [5] - 7:4, 22:20, 24:17, 36:14, 37:22
**reconcilable** [1] - 9:11
**reconcile** [1] - 24:3
**record** [4] - 3:10, 40:8, 46:20, 51:4
**recorded** [1] - 2:20
**Records** [1] - 25:22
**recover** [1] - 7:2
**recovery** [4] - 21:25, 24:12, 24:18, 39:8
**reduce** [1] - 41:4
**reemphasizes** [1] - 24:16
**refers** [1] - 5:24
**regard** [1] - 48:2
**regarding** [3] - 5:12, 45:8, 45:18
**regardless** [1] - 9:4
**regulations** [1] - 23:21
**reimburse** [2] - 38:21, 38:23
**reimbursement** [2] - 31:14, 37:17
**rejected** [3] - 27:21, 35:20, 40:18
**relate** [1] - 7:22
**related** [3] - 45:20, 46:20, 49:21
**relates** [1] - 35:17
**relating** [5] - 5:12, 5:13, 45:8, 45:18, 45:23
**relevance** [1] - 11:3
**relevant** [1] - 27:22
**reliance** [12] - 16:4, 17:12, 18:11, 18:18, 19:20, 20:7, 36:13, 37:20, 38:2, 38:8, 48:16, 48:19
**relied** [1] - 37:15
**relief** [2] - 47:4, 49:3
**rely** [9] - 36:4, 36:15, 36:24, 37:12, 37:13, 37:19, 38:24, 40:14, 40:19

**relying** [2] - 22:16, 42:13
**remains** [1] - 49:24
**remarkably** [1] - 25:9
**remedies** [2] - 48:23, 49:12
**remit** [1] - 30:25
**remove** [1] - 13:3
**removed** [1] - 13:1
**renders** [2] - 6:15, 6:17
**repair** [2] - 6:1, 23:1
**Repair** [1] - 6:2
**repeat** [1] - 21:18
**repeatedly** [2] - 7:4, 40:17
**replaces** [1] - 23:25
**replete** [1] - 33:2
**reply** [3] - 21:2, 21:4, 21:21
**Reporter** [3] - 2:17, 2:17, 51:9
**REPORTER** [1] - 51:2
**represented** [5] - 27:13, 34:23, 35:13, 35:15, 38:14
**representing** [1] - 37:7
**request** [2] - 17:8, 17:10
**requests** [1] - 16:21
**require** [1] - 31:8
**required** [5] - 7:5, 28:7, 29:5, 34:3, 35:24
**requirement** [11] - 30:5, 30:12, 31:2, 31:11, 32:8, 34:5, 34:21, 36:7, 37:2, 37:15, 38:17
**requires** [2] - 5:22, 7:12
**reread** [1] - 15:5
**research** [1] - 11:1
**reserve** [4] - 21:2, 46:13, 46:18, 50:6
**resolve** [2] - 18:5, 46:8
**resolved** [2] - 18:24, 23:5
**respect** [25] - 6:20, 8:2, 18:10, 19:7, 24:15, 24:19, 24:24, 26:23, 27:9, 30:18, 30:20, 31:24, 33:1, 34:24, 35:3, 35:5, 35:12, 35:15, 35:18, 36:13, 40:15, 40:19, 46:24, 48:14, 49:4
**respectfully** [6] - 18:19, 29:7, 30:3, 34:15, 34:25, 36:7
**respond** [2] - 16:24, 21:22
**response** [2] - 5:20, 36:20
**responsibility** [1] - 42:8
**rest** [2] - 4:22, 46:18
**results** [1] - 20:16
**review** [1] - 38:18
**reviewing** [1] - 20:16
**reviews** [2] - 41:2, 41:3
**revise** [1] - 39:24
**revised** [1] - 39:25
**revisited** [1] - 39:23
**rewards** [1] - 20:21
**RICO** [34] - 9:22, 10:1, 10:2, 12:10, 12:13, 12:15, 13:19, 14:7, 14:10, 14:19, 15:22, 24:13, 27:10, 27:24, 29:11, 29:18, 29:20, 30:1, 30:2, 30:6, 30:12, 30:15, 31:21, 32:3, 32:4, 34:4, 34:24, 35:12, 35:14, 47:1, 47:2, 47:13, 48:3
**rights** [4] - 6:17, 8:19, 9:13, 24:4
**ripe** [1] - 17:9
**rise** [1] - 3:2
**road** [1] - 49:23
**Robert** [1] - 3:16
**ROBERT** [1] - 1:21

**Royal** [2] - 2:5, 4:5
**Rule** [1] - 24:25
**rule** [2] - 14:20, 16:20
**ruled** [2] - 4:25, 16:14
**Rules** [1] - 49:1
**rulings** [1] - 5:17
**running** [2] - 31:16, 31:18

## S

**SANDRA** [1] - 1:22
**Sandra** [1] - 3:15
**satisfactorily** [1] - 16:25
**satisfactory** [2] - 17:1, 36:6
**satisfied** [5] - 30:5, 30:13, 31:2, 32:18, 37:14
**satisfies** [1] - 7:5
**satisfy** [1] - 32:8
**satisfying** [1] - 38:20
**scenario** [1] - 15:15
**schedule** [3] - 19:5, 19:12, 41:1
**scheduled** [2] - 19:6, 19:8
**scheme** [2] - 30:8, 34:8
**schemes** [2] - 47:18, 49:20
**scope** [1] - 49:11
**second** [3] - 36:1, 42:22, 45:25
**section** [2] - 6:15, 7:14
**Section** [9] - 6:24, 8:10, 8:12, 8:16, 10:7, 22:8, 22:11, 23:7, 41:24
**Sedima** [1] - 13:18
**see** [5] - 38:1, 47:16, 49:24, 49:25, 50:2
**seek** [2] - 31:13, 47:3
**select** [1] - 46:9
**send** [1] - 44:16
**sense** [3] - 25:4, 26:25, 39:15
**separate** [8] - 10:14, 10:20, 11:16, 11:17, 28:11, 29:6, 30:11, 50:9
**separated** [2] - 34:16, 34:17
**separately** [1] - 50:10
**series** [2] - 25:2, 49:5
**service** [1] - 33:15
**services** [1] - 41:11
**session** [1] - 3:4
**set** [6] - 17:23, 23:20, 24:20, 27:12, 35:23, 39:1
**sets** [1] - 8:12
**settle** [1] - 7:18
**seven** [3] - 27:1, 27:2
**sever** [2] - 50:4
**several** [1] - 19:8
**severally** [1] - 49:4
**severance** [2] - 48:24, 49:22
**severed** [2] - 27:4
**shall** [4] - 5:13, 6:5, 7:1, 7:11
**shape** [1] - 39:4
**shared** [1] - 49:17
**shares** [1] - 50:7
**shops** [2] - 25:24, 26:2
**short** [2] - 32:10, 44:5
**show** [2] - 16:4, 31:8
**showing** [1] - 42:14
**shows** [1] - 25:8
**shut** [1] - 31:18

**side** [4] - 13:9, 14:19, 14:22, 40:13
**sides** [1] - 23:3
**signatures** [1] - 29:4
**significant** [1] - 25:12
**significantly** [1] - 22:10
**similar** [2] - 5:4, 35:19
**similarities** [1] - 26:12
**simple** [1] - 43:24
**simply** [4] - 17:12, 20:7, 26:24, 30:6
**singular** [2] - 12:6, 12:7
**sit** [2] - 8:4, 31:8
**situation** [3] - 22:24, 41:9, 41:15
**six** [2] - 27:2, 42:20
**slow** [1] - 5:6
**sole** [6] - 12:10, 13:25, 14:3, 29:22, 47:15, 47:22
**solely** [3] - 12:16, 31:17, 39:7
**someone** [1] - 20:5
**soon** [1] - 46:22
**sophisticated** [4] - 16:15, 19:17, 36:3, 48:15
**Sorry** [1] - 14:17
**sorry** [5] - 5:9, 25:22, 32:24, 42:7, 43:11
**sought** [1] - 39:8
**specific** [8] - 5:24, 32:13, 33:9, 33:11, 33:18, 34:7, 35:22, 36:11
**specifically** [5] - 5:2, 14:4, 16:20
**specificity** [3] - 35:24, 47:25, 48:8
**specify** [1] - 33:7
**spent** [1] - 36:2
**Square** [1] - 2:7
**squarely** [1] - 40:17
**stage** [2] - 17:2, 48:18
**start** [2] - 41:25, 46:7
**starting** [2] - 5:18, 40:24
**state** [5] - 3:14, 6:7, 12:25, 28:9, 48:4
**statement** [1] - 6:10
**statements** [2] - 26:13, 34:11
**statute** [5] - 5:1, 22:13, 35:9, 47:2, 48:11
**statutes** [1] - 16:16
**statutory** [1] - 7:6
**stay** [2] - 40:3, 46:7
**steal** [2] - 25:19, 25:21
**stenography** [1] - 2:20
**stepping** [1] - 32:6
**steps** [1] - 29:3
**Stern** [1] - 3:16
**STERN** [2] - 1:18, 1:21
**still** [8] - 5:7, 10:21, 11:1, 17:8, 29:8, 32:8, 43:19, 44:23
**stopped** [1] - 31:4
**strange** [1] - 20:15
**strict** [1] - 37:2
**strikingly** [1] - 6:15
**strongly** [2] - 49:13, 49:18
**structure** [3] - 11:14, 11:16, 47:8
**stuff** [2] - 14:19, 14:22
**subchapter** [1] - 6:5
**subject** [1] - 39:9
**submission** [1] - 28:12
**submissions** [1] - 29:5
**submit** [10] - 8:13, 19:13, 29:7, 30:3, 34:15, 34:25, 36:7, 40:7, 44:20, 49:14

**submits** [1] - 44:12
**submitted** [4] - 33:15, 33:16, 37:16, 48:6
**submitting** [3] - 5:14, 26:16, 30:24
**substantial** [2] - 31:3, 32:19
**substantially** [1] - 28:18
**sue** [7] - 6:1, 6:13, 6:14, 6:18, 6:25, 20:13, 22:25
**sues** [1] - 17:7
**sufficiency** [1] - 48:1
**sufficient** [6] - 32:1, 32:21, 32:23, 36:8, 40:3, 40:9
**sufficiently** [4] - 28:10, 33:23, 34:22, 35:22
**suggest** [2] - 43:25, 44:1
**suggested** [2] - 47:3, 48:16
**suggests** [1] - 49:18
**suing** [1] - 23:2
**suit** [1] - 7:3
**Suite** [1] - 2:14
**suits** [1] - 8:11
**superfluous** [1] - 6:18
**Superintendent** [4] - 5:16, 8:13, 23:21, 46:1
**Supp** [1] - 23:11
**supplies** [1] - 12:16
**supply** [10] - 20:2, 20:9, 20:10, 20:11, 20:12, 44:11, 44:14, 44:15
**Supply** [20] - 2:3, 2:3, 2:4, 2:4, 2:5, 2:11, 2:12, 3:19, 3:20, 3:21, 4:3, 4:5, 30:10
**support** [2] - 9:21, 37:16
**supported** [1] - 27:21
**supports** [1] - 39:3
**suppose** [1] - 32:5
**Supreme** [10] - 4:25, 10:12, 10:24, 11:15, 15:2, 15:10, 15:14, 28:5, 31:24, 49:9
**surprise** [1] - 10:7
**survives** [1] - 49:24
**sustained** [1] - 7:2
**System** [2] - 16:5, 17:22

## T

**table** [2] - 34:12, 34:14
**TAFT** [1] - 1:14
**talks** [1] - 11:5
**Tamayeff** [2] - 2:6, 3:19
**technical** [1] - 16:22
**Telephone** [1] - 2:18
**template** [1] - 49:17
**term** [1] - 16:22
**terminating** [1] - 26:8
**termination** [1] - 32:11
**terms** [3] - 5:23, 41:8, 45:7
**test** [1] - 40:4
**theory** [1] - 23:24
**there'll** [1] - 46:23
**thereby** [1] - 9:9
**therefore** [2] - 6:25, 22:19
**they've** [6] - 14:23, 22:2, 24:4, 24:24, 34:11, 40:17
**thousand** [1] - 20:11

**thousands** [8] - 20:1, 20:3, 20:8, 20:9, 28:13, 37:11, 38:11, 41:1
**threat** [7] - 31:5, 31:9, 31:21, 31:22, 32:2, 32:6, 47:23
**three** [2] - 7:2, 30:19
**three-fold** [1] - 7:2
**Thursday** [1] - 1:7
**ticket** [2] - 40:24, 42:8
**timely** [1] - 41:20
**timings** [1] - 26:10
**today** [4] - 9:15, 31:9, 36:2, 46:22
**together** [3] - 11:24, 50:2, 50:3
**tomorrow** [1] - 46:23
**took** [1] - 29:3
**tools** [1] - 26:13
**touch** [1] - 24:22
**toward** [1] - 49:10
**traffics** [1] - 25:2
**transaction** [2] - 25:2, 49:5
**transactions** [1] - 49:6
**transcript** [1] - 51:3
**Transcript** [1] - 2:20
**TRANSCRIPT** [1] - 1:11
**Transcription** [1] - 2:20
**Travelers** [1] - 41:18
**treated** [1] - 6:5
**tried** [1] - 50:1
**triggered** [1] - 41:18
**Trinity** [1] - 1:20
**triplicate** [1] - 20:20
**trite** [1] - 46:7
**true** [3] - 13:7, 29:21, 47:20
**trust** [1] - 21:19
**try** [3] - 12:24, 41:24, 45:20
**trying** [1] - 9:14
**Tsirelman** [3] - 3:22, 3:23, 35:16
**TSIRELMAN** [12] - 2:2, 2:9, 3:24, 4:12, 4:14, 19:22, 43:21, 44:3, 44:5, 44:8, 44:10, 45:4
**Turkette** [10] - 10:12, 10:21, 11:6, 13:8, 15:1, 15:12, 15:16, 15:17, 47:16
**two** [11] - 9:11, 10:2, 14:11, 16:2, 28:5, 30:20, 31:18, 31:25, 35:18, 35:19, 36:1
**type** [4] - 17:14, 39:7, 39:8, 41:22

## U

**U.S** [2] - 47:16, 49:9
**unanimously** [1] - 36:23
**under** [20] - 6:5, 7:13, 8:25, 23:12, 23:24, 24:6, 24:13, 24:25, 31:14, 38:21, 40:1, 40:3, 41:12, 42:17, 43:20, 46:10, 49:1, 49:8
**underlying** [2] - 31:12, 31:13
**understandable** [1] - 33:21
**understood** [3] - 9:24, 11:20, 13:12
**undilutedly** [2] - 14:7, 14:12
**unequivocally** [1] - 40:18
**United** [1] - 49:8
**United States** [7] - 1:1, 1:5, 1:12, 3:2, 7:1, 15:14, 28:6
**unjust** [5] - 24:14, 40:16, 40:20, 48:21, 48:22
**unknown** [1] - 11:25

**unless** [1] - 5:1
**unlike** [1] - 25:6
**unqualified** [1] - 16:6
**unreasonable** [4] - 20:7, 37:20, 37:23, 38:2
**unsupported** [1] - 30:16
**up** [5] - 16:10, 26:17, 31:16, 31:18, 32:5
**upcoded** [1] - 28:18
**Utopia** [2] - 2:5, 3:21

## V

**Valerio** [3] - 3:22, 35:16
**VALERIO** [22] - 2:2, 2:8, 3:12, 3:17, 8:8, 9:18, 16:2, 18:7, 18:13, 21:1, 21:5, 40:23, 42:10, 42:13, 42:16, 43:12, 43:15, 43:19, 45:6, 46:14, 46:16, 50:11
**valid** [6] - 7:12, 36:24, 36:25, 37:3, 37:6, 44:23
**validity** [2] - 18:23, 45:10
**variety** [2] - 12:15, 13:22
**various** [1] - 25:13
**venue** [1] - 9:12
**veracity** [1] - 16:6
**verification** [2] - 16:21, 17:7
**versus** [4] - 21:15, 23:10, 28:6, 47:16
**violates** [1] - 6:2
**violation** [1] - 6:24
**violations** [1] - 8:23
**void** [1] - 6:6

## W

**waif** [1] - 15:7
**waiver** [1] - 6:3
**wants** [1] - 4:18
**water** [1] - 15:2
**website** [2] - 25:18, 25:21
**weeks** [1] - 32:1
**weird** [1] - 14:20
**welcome** [1] - 15:25
**well-pleaded** [1] - 47:19
**whatsoever** [1] - 35:14
**whereby** [1] - 8:12
**WHEREUPON** [1] - 50:18
**wholesale** [1] - 28:23
**wholesalers** [1] - 28:23
**WICKERSHAM** [1] - 1:14
**Wide** [1] - 23:10
**William** [1] - 3:16
**WILLIAM** [1] - 1:17
**wish** [1] - 9:20
**wishes** [1] - 9:18
**with§409** [1] - 46:6
**woke** [1] - 16:10
**won** [2] - 15:12, 15:13
**wondering** [1] - 4:9
**word** [1] - 22:15
**words** [1] - 22:13
**Workers** [1] - 49:8
**workers'** [1] - 19:11
**World** [1] - 1:16

**write** [1] - 13:21
**writing** [3] - 7:17, 40:8, 46:18

## Y

**Yakov** [3] - 2:13, 4:2, 10:2
**years** [7] - 13:18, 16:10, 16:17, 30:19, 30:20, 42:20, 44:21
**YORK** [1] - 1:1
**York** [8] - 1:5, 1:16, 1:21, 2:8, 2:14, 3:3

## Z

**Zavrazhin** [1] - 2:12
**Zoya** [2] - 2:6, 3:18

## §

**§12(b)(6** [1] - 18:5
**§1679** [1] - 6:14
**§1961(4** [1] - 47:12
**§20(a)(2** [1] - 49:1
**§409** [9] - 22:5, 22:13, 24:1, 24:3, 24:6, 24:13, 41:24, 42:3, 46:10
**§5106** [1] - 42:13